A96A1202. SUTTON v. THE STATE.

(478 SE2d 910)

POPE, Presiding Judge.

Robert Wayne Sutton was convicted for trafficking in methamphetamine. He appeals and we affirm.

Evidence at the hearing on the motion to suppress and at the bench trial was that at 1:25 a.m. on October 13, 1994, Officer Long and Corporal Pearson of the Gwinnett County Police Department were patrolling when they noticed a vehicle with the tag light out. Pearson activated his emergency equipment to stop the vehicle. The driver of the vehicle, later determined to be Sutton, continued to drive slowly, and eventually stopped at a convenience store.

Long approached the car and obtained Sutton's insurance card, which had expired, and a uniform citation which Sutton was using in lieu of a driver's license. Long took the documents to the patrol car to run a computer check on the license, while Pearson questioned Sutton about additional matters. Pearson recalled that Sutton was wearing a uniform and, in response to questioning, Sutton said that he had just left work. The computer check revealed that Sutton was on probation for a felony, and Long related this information to Pearson. Pearson questioned Sutton regarding the probation and Sutton stated that he was on probation for a violation of the Georgia Controlled Substances Act.

Pearson then asked Sutton for consent to search his vehicle. Pearson testified that Sutton consented, saying "sure, no problem. I have nothing to hide." Pearson could not recall whether he advised Sutton of his right to refuse the search. Pearson testified that Sutton was not under arrest when his consent to search was requested and that he was free to leave. Long corroborated this testimony.

Sutton stepped out of the car and Long stood next to him. Pearson recalled that Sutton was allowed to stand by his own car with

"the opportunity to stop the consent search at any time he [chose] to do so." Pearson stated that no threats or promises were made to Sutton and that Sutton's consent to the search was absolute. Long stated that during the stop either he or Pearson retained Sutton's license and insurance documents. Long testified that he would have returned these materials to Sutton if he had wanted to leave.

Pearson looked under the edge of Sutton's driver's seat and found a zipped plastic bag containing a white powdery substance, later confirmed to be more than 44 grams of methamphetamine. Pearson also found a set of scales, a plastic bottle of white powder and numerous empty plastic bags. Pearson asked what the white powdery substance in the bag was and Sutton stated that it was speed that belonged to a friend of his. Sutton was arrested and taken to jail where a bodily search revealed another bag of methamphetamine in his sock and $2,131 in his jacket pocket.

1. In his first enumeration of error, Sutton claims that the court improperly denied his motion to suppress. Sutton contends that given the circumstances of the stop, he had no choice but to consent to the search and that his consent was coerced. Citing *Rogers v. State*, 206 Ga. App. 654 (426 SE2d 209) (1992), he argues that the officers obtained his consent while detaining him beyond the detention authorized by the traffic stop and that the officers lacked probable cause to search. At the suppression hearing, Sutton testified that Pearson stated that he normally searched the cars of people on probation, that Sutton did not have time to respond to Pearson's request to search his car, that he did not recall consenting to the search, and that he did not have the choice to refuse the search.

"When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *Allenbrand v. State*, 217 Ga. App. 609 (1) (458 SE2d 382) (1995).

We reject Sutton's argument that he was illegally detained. Although Sutton concedes that the initial stop was valid, he argues that the initial stop became an impermissible detention because he was not free to leave after the officers became aware of the tag light violation and expired insurance.

In *Berkemer v. McCarty*, 468 U. S. 420 (104 SC 3138, 82 LE2d 317) (1984), the United States Supreme Court formulated an objective test to determine whether a detainee is "in custody." That test is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. The Supreme Court

also held that the safeguards prescribed by *Miranda*[1] become applicable only after a detainee's freedom of action is curtailed to the degree associated with formal arrest. The rationale behind the *Berkemer* holding is that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination so as to require that he be advised of his constitutional rights.

In applying the above-mentioned test and rationale, we have specifically held that roadside questioning during the investigation of a routine traffic incident generally does not constitute a custodial situation. *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990). "A law enforcement officer coming upon the scene of suspected criminal activity [or a traffic incident] will conduct a general on-the-scene investigation and may detain temporarily anyone at the scene who tries to leave. . . ." *Lankford v. State*, 204 Ga. App. 405, 406-407 (2) (419 SE2d 498) (1992). Moreover, "an officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents. [Cits.]" *Rogers v. State*, 206 Ga. App. at 657 (2). The fact that an officer retains a detainee's license for a short period during the course of an investigation does not necessarily mean that the detainee is in custody, even if at that point, by leaving, the detainee could be arrested for violating State law. See *Crum v. State*, 194 Ga. App. at 272, where we found that a driver who could not show proof of insurance during a routine traffic stop, and thus could have been arrested if he attempted to leave, was not " 'in custody' until after he had been given field sobriety tests and formally arrested."

In cases like this, it is " 'crucial to focus on what the [detainee's] immediate "business" is, in order to decide if police retention of his papers would likely impede his freedom to proceed with it' [cit.]" *Rogers v. State*, 206 Ga. App. at 658 (2), and thus, reach a determination as to whether or not a reasonable person in the detainee's position would believe that the detention was temporary. Here, Sutton's immediate business was heading home from work. Corporal Pearson posed questions to Sutton that were relevant to the traffic stop for the tag light and, later, to the status of his insurance, driver's license and felony probation. Although Pearson testified that he asked Sutton, who had on "some type of a workmen uniform," what he was doing out at that time of night, we find that Pearson's limited questioning was reasonably related to the circumstances that justified the

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

initiation of the momentary stop. See *Pitts v. State*, 221 Ga. App. 309 (2) (471 SE2d 270) (1996); compare *Smith v. State*, 216 Ga. App. 453 (2) (454 SE2d 635) (1995). Given these circumstances, we hold that when Sutton consented to the search, a reasonable person in his position would not have concluded that his freedom of action had been more than temporarily curtailed, but rather, that he was only "being briefly detained while the officer determined the nature of the situation." *Daugherty v. State*, 182 Ga. App. 730, 731 (356 SE2d 902) (1987); *Lankford v. State*, 204 Ga. App. at 407.[2] Our inquiry now becomes whether Sutton's consent to the search was voluntary. "Where the State seeks to justify a warrantless search on grounds of consent, it has the burden of proving that the consent was, in fact, freely and voluntarily given. A valid consent eliminates the need for either probable cause or a search warrant. The voluntariness of a consent to search is determined by looking at the totality of the circumstances. . . ." (Citations and punctuation omitted.) *Hunter v. State*, 190 Ga. App. 52, 53 (1) (378 SE2d 338) (1989).

"Assuming the existence of an otherwise valid non-pretextual initial investigatory stop of appellant's vehicle, the determination of the validity of the subsequent consensual search is not dependent upon the existence of probable cause or suspicion to support the officer's request to conduct the search, but upon the voluntariness of appellant's waiver of his expectation of privacy in the vehicle in response to that request." Id. at 54.

In the instant case, the trial court's conclusion that Sutton's consent was freely and voluntarily given was authorized, and the motion to suppress was properly denied. See generally *Allen v. State*, 191 Ga. App. 623, 624 (1) (382 SE2d 690) (1989).

2. Sutton's vehicle and $2,130 were seized at the time of his arrest. On December 9, 1994, a complaint against this property was filed pursuant to OCGA § 16-13-49. Sutton filed responsive pleadings, and the parties entered into a compromise agreement regarding the property.

Here, Sutton argues that his plea of former jeopardy based on the previous forfeiture action was improperly denied. Further, he argues that because the State claimed that the forfeiture was reimbursement for the cost of arresting him, the State should have been required to present evidence of the relationship between the amount

---

[2] Contrary to Sutton's argument, Pearson's belief, which was never communicated to Sutton, that a person *could* be arrested for the traffic violations at issue is not dispositive, given Pearson's testimony that Sutton was free to leave before the search. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U. S. 420, 442.

seized and the expenses it had incurred.

Sutton's double jeopardy argument was rejected in *Murphy v. State*, 219 Ga. App. 474 (465 SE2d 497) (1995), aff'd 267 Ga. 120 (475 SE2d 907) (1996). Similarly, we find no merit to Sutton's argument that the State was required to present evidence of the costs and expenses of the forfeiture action to prove that such civil action was not penal in nature. Our Supreme Court has held unequivocally that "the forfeiture proceeding under the statute is legitimately a civil sanction and does not constitute punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution." *Murphy v. State*, 267 Ga. at 121.

3. Sutton argues that the court erred in admitting into evidence the 44.4 grams of methamphetamine because the State failed to prove chain of custody. Specifically, Sutton claims that the seal on the evidence bag was broken by a crime lab chemist who was not available to testify; that it is unclear when the bag was opened; and that the seal was broken under circumstances in which there was an actual risk of contaminating the evidence with other evidence.

We disagree. There was evidence that the unavailable crime lab chemist, Dana Macey, received the bag of methamphetamine on October 17, 1994 from an officer. Another chemist at the crime lab, Steve Ellis, testified that before trial, he retrieved this evidence, which was sealed with red evidence tape as laboratory procedure dictated, from the storage area and conducted an analysis. Ellis stated that the evidence tape bore Macey's initials and was dated November 30, 1994. Ellis testified that based on office procedure, he could ascertain that Macey originally cut the bag open. He also stated that based upon office procedure, he believed that the evidence was the same as that which Macey received on October 17, 1994.

"Where the State seeks to introduce evidence of a fungible nature, it need only show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible. The trial court was authorized to conclude that the State had met its burden with respect to the establishment of the chain of custody in the present case. There being, at most, bare speculation of tampering or substitution, the trial court correctly admitted the . . . evidence." (Citations and punctuation omitted.) *Williams v. State*, 199 Ga. App. 122, 123 (2) (404 SE2d 296) (1991); see also *Baker v. State*, 202 Ga. App. 73, 75 (2) (413 SE2d 251) (1991).

4. Sutton claims that the evidence was insufficient to convict because his possession of the 44.4 grams of methamphetamine was not proven beyond a reasonable doubt. We disagree.

"When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to its weight." (Citations and punctuation omitted.) *Oglesby v. State*, 194 Ga. App. 383 (3) (390 SE2d 630) (1990). Contrary to Sutton's argument that it is a reasonable hypothesis that the substance tested by Ellis was not the substance taken from Sutton's vehicle, we find that the circumstantial evidence was sufficient to exclude any reasonable hypothesis other than Sutton's guilt of trafficking in methamphetamine. A rational trier of fact could find from the evidence adduced at trial proof of his guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Andrews and Smith, JJ., concur.*

DECIDED DECEMBER 3, 1996 —

*Sidney L. Moore, Jr.*, for appellant.

*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney*, for appellee.