A00A1885. THE STATE v. GIBBONS et al.
(547 SE2d 679)

BARNES, Judge.

Pursuant to OCGA § 5-7-1 (a) (4), the State appeals the trial court's grant of a motion to suppress filed by Michael Stinemetz and Vincent Gibbons. The State contends the trial court erred by finding that the state trooper impermissibly expanded the scope of the traffic investigation and also erred by failing to find that the trooper had a reasonable suspicion to request Stinemetz's consent to search his

person. We disagree and affirm.

1. In reviewing a trial court's decision on a motion to suppress, an appellate court's responsibility is to ensure that there was a substantial basis for the decision. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). Our Supreme Court has established three guiding principles for reviewing such rulings:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and *credibility* must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted; emphasis in original.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Further,

> [determining the c]redibility of witnesses and the weight to be given their testimony is a . . . power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony.

Id. at 56 (3).

2. Construed most favorably toward upholding the trial court's findings and judgment, the evidence shows that a Georgia State Trooper pulled over Stinemetz and Gibbons for a seat belt violation. The traffic stop was recorded by a videocamera in the trooper's cruiser, and the trial court viewed this videotape during the motion to suppress hearing. This tape shows that the state trooper immediately asked Stinemetz "twenty questions" that were unrelated to the reason he pulled him over. A transcript of their encounter follows:

> Q. How ya doing? May I see your driver's license please? I stopped you because you didn't have your seat belt on, but I see you got it on now.
> A. [Unintelligible.] . . . better put it on.
> Q. Y'all didn't have 'em on did you? Where are y'all heading to?
> A. Huh?
> Q. Where y'all heading to?
> A. Back to Nashville.

Q. Where you been?
A. We went down to Atlanta to visit some friends. They had a Memorial Day party down there.
Q. Step back. [Unintelligible.] . . . I can't hardly hear you.

[Stinemetz complies by getting out of the car, and he and the officer stand in front of the patrol car directly in front of the videocamera.]

A. Yeah, they had a Memorial Day party with some friends. Were down there visiting, today.
Q. Where you work at?
A. Upchurch Construction.

[Stinemetz tucks his shirt in and places his left hand in his left pocket in a natural, habitual manner.]

Q. Take your hand out of your pocket for me. You work where now?
A. Upchurch Construction.
Q. What do you do for them?
A. Drive a dump truck.
Q. Do you have a commercial driver's license?
A. Yes.
Q. Whose car?
A. Mine, well, it's in my Mom's, but it's just mine.
Q. Who is this gentleman you have with you?
A. Uh, he's just a friend of mine. We went down to visit some friends today.
Q. What's his name?
A. Mario.
Q. What's his last name?
A. Don't know his last name. [Unintelligible.]
Q. How long you known him?
A. About a year, probably.
Q. Where y'all go to school at?
A. Well, we went to Hunter's Lane.
Q. What's that?
A. High school. I mean I been out for awhile. I known his cousin. I just known him about a year.
Q. Whose, where did you go to in Atlanta?
A. North, North Town apartments.
Q. How long y'all been down there?
A. Just a couple of hours. Down there visiting some friends. Did I do something wrong or something?
Q. Well, you're not wearing your seat belt. Georgia's got a seat belt law.

A. Yeah. [Unintelligible.] . . . he had his on. [Unintelligible.] . . . we saw you [Unintelligible.] . . . so I put it on.
Q. That's what you did wrong. But, on the seat belt violation, that's the reason I stopped you.
A. Okay.
Q. Do you have business with these people in the other car? Do y'all know them?
A. No, uh, uh. I think the cop had them pulled over when we pulled up here.
Q. How long were y'all in Atlanta?
A. Just a couple of hours.
Q. Whose friends are they?
A. His friends, his cousin's friends.
Q. Did his cousin go too?
A. No. Uh-uh.
Q. Do you have anything in your pockets?
A. No, uh-uh.
Q. Do you mind if I search your pockets?
A. Uh . . .
Q. Do you have a knife or a gun or anything?

[Stinemetz reaches for pockets in searching, responsive manner, and officer prevents him from placing hands in his pockets.]

Q. Do you mind if I search your pocket?

[Trooper places hand on outside of Stinemetz's pocket and feels outside of it.]

A. Well, I mean . . .
Q. It's for my safety and yours too. Do you have anything in your pockets?
A. No, not really.
Q. Do you mind if I search your pockets?
A. No.
Q. You don't mind? What you got here? A pager?

[After this statement, trooper places hand inside right pocket and removes a pager.]

A. Yeah. Uh-huh.
Q. What you got in this pocket? Turn for me.

[Trooper places hand in left pocket.]

Q. You don't have a hypodermic in there or nothing do you?

[Trooper removes plastic pill vial.]

Q. What's in the vial here?
A. Nothing. Nothing, now.
Q. Cocaine residue? Is that what it is?

[Trooper handcuffs Stinemetz and places him in the back of his patrol car.]

After placing Stinemetz in the patrol car, the state trooper questioned Gibbons about their trip and how they knew each other. Gibbons' answers agreed substantially with what Stinemetz had said. The trooper then arrested Gibbons for possession of the substance in the vial found in Stinemetz's left pants pocket. The trooper then performed an inventory of Stinemetz's car and found a package of cocaine in the trunk.

In a preliminary hearing held three months after the appellants' arrest, the trooper's testimony about his encounter with the appellants varied from both the videotape and his later testimony in the motion to suppress hearing. The trooper initially claimed that Stinemetz could not produce a valid driver's license, but later admitted in the motion to suppress hearing that he had. He also testified in the preliminary hearing that he asked for Stinemetz's consent to search the car and his person after questioning Gibbons about their itinerary and getting a "completely different" story. The videotape shows the trooper never asked for consent to search the car, that he did not question Gibbons before asking for consent to search Stinemetz's pockets, and that the appellants' stories were substantially similar. In the preliminary hearing, the trooper claimed that he asked to search Stinemetz for officer "safety," but when asked what made him believe he was in jeopardy, the officer replied, "I don't know. I don't know the answer to that. Just twenty years of law enforcement you sometimes get an uneasy feeling about certain people." In the later motion to suppress hearing, the officer claimed that he asked to search because he saw bulges in Stinemetz's pockets and he "didn't know if it was a knife or a gun."

The trial court found that by asking questions unrelated to the seat belt violation, the trooper exceeded the authorized scope of the original stop. Therefore, the trial court found that the trooper's detention of appellants was impermissible because he had no reasonable articulable suspicion for starting the new investigation. Because the evidence was seized during the unlawful detention, the trial court granted the motion to suppress.

An officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has "reasonable suspicion" of other criminal activity. *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996). This reasonable suspicion must be

based on more than a subjective, general suspicion or hunch. *Holden v. State*, 241 Ga. App. 524, 525 (527 SE2d 237) (1999). The detention must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention, and the trooper must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. Id.

In this case, the trooper admitted that he held Stinemetz's driver's license while asking questions that were not related to the seat belt violation.[1] According to the trooper, Stinemetz was "not free to go" while he asked these questions. The tape shows that when Stinemetz, who was obviously puzzled by the trooper's detailed quizzing about his whereabouts, asked what he had done wrong, the trooper reminded him about the seat belt violation and then launched into his unrelated investigation once again.

The trial court did not err by concluding that the detention was unauthorized. *Simmons v. State*, supra, 223 Ga. App. at 782; *Smith v. State*, 216 Ga. App. 453, 454-455 (2) (454 SE2d 635) (1995). Because Stinemetz's consent to search his person was the product of this illegal detention, it was not valid. *VonLinsowe v. State*, 213 Ga. App. 619, 622 (2) (445 SE2d 371) (1994). As the cocaine residue in the bottle and the cocaine in the trunk were located as a result of the illegal search of Stinemetz's person, the trial court did not err by granting the motion to suppress this evidence.

*Judgment affirmed. Blackburn, C. J., concurs. Pope, P. J., Johnson, P. J., Smith, P. J., Ruffin, Miller, Ellington and Phipps, JJ., concur and concur specially. Andrews, P. J., Eldridge and Mikell, JJ., dissent.*

PoPE, Presiding Judge, concurring specially.

I concur in the majority opinion but write separately to stress two points.

First, the trial court found that the officer continued to detain the defendant during the questioning and during the request for consent to search his person. The court stated, "Rather than ticket Stinemetz or release him, the officer decided to conduct a drug investigation." It is this continued detention that makes the questioning and request to search without reasonable suspicion of criminal activity impermissible. *State v. Sims*, 248 Ga. App. 277 (546 SE2d 47) (2001).

Second, an officer who has completed a traffic stop may question the driver on another topic and request consent to search so long as

---

[1] There is no evidence that the trooper asked these questions while performing a license or vehicle registration check.

the driver is not still being detained, i.e., the encounter is consensual. As stated in *Sims*,

> The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The " 'touchstone of the Fourth Amendment is reasonableness.' *Florida v. Jimeno*, 500 U. S. 248, 250 (111 SC 1801, 114 LE2d 297) (1991)." *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417, 136 LE2d 347) (1996). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Id. And, the Supreme Court has consistently rejected bright-line rules in applying this test. Id. In deciding whether the question about drugs and weapons, standing alone, was unreasonable, we note that "mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991). The Supreme Court has made clear that "[s]o long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." (Citation and punctuation omitted.) Id.; *Simmons v. State*, 223 Ga. App. 781, 783 (2) (479 SE2d 123) (1996) (if the police questioning was consensual, then questions on an unrelated topic after the conclusion of a valid traffic stop are allowed). Second, with regard to the consent to search, "one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." (Citations omitted.) *Schneckloth v. Bustamonte*, 412 U. S. 218, 219 (93 SC 2041, 36 LE2d 854) (1973). See also *Dean v. State*, 250 Ga. 77, 80 (2) (a) (295 SE2d 306) (1982). In deciding whether consent to search is valid, the Supreme Court has made clear that the sole test is whether the consent was voluntary. *Robinette*, 519 U. S. at 40. And, if the consent is voluntary, an officer may obtain consent to search a car following the conclusion of a valid traffic stop, without reasonable suspicion of criminal activity. Id. Finally, " 'voluntariness is a question of fact to be determined from all the circumstances.' " (Citation omitted.) Id. In *Robinette*, the defendant was stopped for speeding, and after the stop was completed and his license returned, the officer asked him whether he had any drugs or weapons. *Robinette*, 519 U. S. at 36. Robinette answered no, after which the officer asked if he could search the car. Robinette consented. Id. The Ohio Supreme Court had ruled that the evidence subsequently discovered in the car should be suppressed because the

search resulted from an unlawful detention because Robinette had not been told that he was free to go. Id. The Supreme Court reversed and held that the Fourth Amendment did not require such a bright-line test. *Robinette*, 519 U. S. at 39. Rather the test to be employed is whether under the totality of the circumstances the consent was voluntary. And the officer's subjective intent is immaterial to the question. Id. at 38 (citing *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) (1996)). However, as is shown in *Migliore* [*v. State*, 240 Ga. App. 783 (525 SE2d 166) (1999),] and *Smith v. State*, 216 Ga. App. 453, 454-455 (454 SE2d 635) (1995), if the officer continues to detain the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop. This is so because "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." (Citations omitted.) *Terry v. Ohio*, 392 U. S. 1, 18 (88 SC 1868, 20 LE2d 889) (1967). And, "(t)he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Id. at 19. As stated in *State v. Blair*, 239 Ga. App. 340, 341 (521 SE2d 380) (1999), "An officer who questions and detains a suspect for other reasons exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity."

(Footnote and emphasis omitted.) *Sims*, 248 Ga. App. at 278-280.

To reiterate, "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." (Citation and punctuation omitted.) *Florida v. Bostick*, 501 U. S. at 434. Here, like in *Sims*, the trial court found that the defendant was detained without justification when the officer began to question the defendant about drugs and request consent to search. Therefore, the continued encounter was not consensual. Without reasonable suspicion to justify the continued detention, the subsequent consent to search was the product of this impermissible seizure. Accordingly, the trial court did not err in suppressing the evidence obtained in the search.

I am authorized to state that Presiding Judge Johnson and Judge Ellington join in this special concurrence.

RUFFIN, Judge, concurring specially.

I concur with the majority opinion and with Presiding Judge Pope's concurring opinion. I write separately to further address why

a police officer who stops a motorist for a routine traffic violation is not permitted to expand the detention into a fishing expedition for evidence of unrelated offenses.

The dissent posits that the officer was permitted to interrogate Stinemetz concerning a host of matters, unrelated to the seat belt violation, for the ostensible purpose of protecting the public and preventing crime. Although states clearly have a legitimate interest in preventing crime, "the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."[2]

The initial intrusion in this case was justified by Stinemetz's violation of the seat belt statute.[3] Obviously, the State's interest in enforcing the statute outweighed Stinemetz's right to proceed along the roadway without any interference. In addition, the United States Supreme Court has recognized that once a motorist is detained for a routine traffic violation, the investigating officer has a right to inspect the driver's license and registration papers[4] and to ask him to get out of the car.[5] Finally, under such circumstances, the officer would have been justified in asking Gibbons questions necessary to prosecute the seat belt violation and to issue him a citation.[6] Again, the State's interest in prosecuting the observed seat belt violation clearly outweighed Stinemetz's right to be free from such questioning.

The record does not contain any evidence, however, which justified the officer's interrogation into other matters, and the United States Supreme Court has proscribed such conduct. In *Knowles v. Iowa*,[7] an officer stopped a motorist for speeding. The officer issued a citation and thereafter searched the driver's car under the guise of a " 'search incident to citation.' "[8] The Court found that the search violated the driver's Fourth Amendment rights.[9] Significantly, the Court reasoned that

> [o]nce [the driver] was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed

---

[2] *Delaware v. Prouse*, 440 U. S. 648, 653-654 (99 SC 1391, 59 LE2d 660) (1979).

[3] See OCGA § 40-8-76.1; *Ohio v. Robinette*, 519 U. S. 33, 38 (117 SC 417, 136 LE2d 347) (1996) (in light of speeding violation, officer had probable cause to stop motorist).

[4] See *Prouse*, supra, 440 U. S. at 659.

[5] See *Robinette*, supra, 519 U. S. at 38.

[6] See *Knowles v. Iowa*, 525 U. S. 113, 118 (119 SC 484, 142 LE2d 492) (1998).

[7] Id.

[8] Id.

[9] See id.

was going to be found either on the person of the offender or in the passenger compartment of the car.[10]

Though the search at issue in *Knowles* may be considered by many a more serious intrusion than the interrogation at issue here, the reasoning employed by the Court is nonetheless applicable. The officer only had probable cause to stop the driver for a specific traffic violation, and the permissible scope of the detention was limited to investigating and prosecuting only that violation.

It does not matter, as the dissent here suggests, that the inappropriate questioning in this case took place "in the middle of a valid traffic stop." The officer's probing interrogation was unrelated to the safety belt violation, no matter when it occurred. Moreover, the dissent assumes that because the stop was valid at its inception, it was valid until the officer issued Stinemetz a citation. This assumption, however, ignores the fact that the continued detention became illegal because of the inappropriate questioning. If we were to adopt the position taken by the dissent, then officers could merely delay issuing a citation while they conduct a fishing expedition for evidence of criminal activity. That is, after all, exactly what happened in this case.

Finally, I note that the Eleventh Circuit considered a case with almost identical facts and reached the same conclusion that the majority has here. In *United States v. Pruitt*,[11] the court considered the propriety of an officer's interrogation of a driver during a routine traffic stop for speeding. As in this case, once the officer in *Pruitt* advised the driver of the reason for the stop, he did not issue a citation, but instead began questioning him on unrelated matters such as where his family resided and how he was employed. The officer further "postpon[ed] the writing of [the traffic] ticket," while attempting to determine whether he possessed any contraband.[12] The court concluded that the Fourth Amendment did not authorize the officer's extended interrogation into unrelated matters:

> Lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unre-

---

[10] Id.
[11] 174 F3d 1215 (11th Cir. 1999).
[12] Id. at 1218.

lated to the initial stop is permissible if the initial detention has become a consensual encounter.[13]

In *Pruitt*, as in this case, the circumstances did not permit such extended detention. There, the officer had no "objectively reasonable and articulable suspicion" that the driver committed any offense other than the traffic violation, and because the officer had not returned the driver's license, the initial detention had not become a consensual encounter.[14] Relying on *Knowles*, the court concluded that the " 'fishing expedition' . . . [was] simply irrelevant, and consti-tute[d] a violation of *Terry*."[15] I reach the same conclusion here.

I am authorized to state that Presiding Judge Smith, Judge Miller and Judge Phipps join in this special concurrence.

ELDRIDGE, Judge, dissenting.

To me, the majority amply demonstrates how far afield we have gotten through the application of the erroneous analysis contained in *Smith v. State*,[16] wherein this Court held that during a valid traffic stop, an officer cannot ask traffic law enforcement questions which are unrelated to the specific traffic violation that produced the stop. Now, under *Smith* — as it is being applied herein and elsewhere — perfectly reasonable general investigative questions that this Court has accepted and which have been routinely asked for years are cause for suppression as somehow violative of *Terry v. Ohio*.[17] As was testified to in this case by the 17-year veteran of the Georgia State Patrol, "[t]he questions that I asked him [Gibbons] were questions I ask of many, many people. . . . I've addressed them to a lot of peo-ple." In my view, such routine, general investigative questions are still permissible during the lawful course of a valid traffic stop, and *Smith v. State* should be overruled.

1. In *Terry v. Ohio*, the United States Supreme Court held that:

We must decide whether at that point it was reasonable for Officer McFadden to have interfered with petitioner's per-sonal security as he did [the pat-down]. And in determining whether the [pat-down] seizure and search were "unreason-able" our inquiry is a dual one — whether the officer's action was justified at its inception, and whether it was reasonably

---

[13] (Citations omitted.) Id. at 1220.
[14] Id.
[15] Id. at 1221.
[16] 216 Ga. App. 453 (454 SE2d 635) (1995).
[17] 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968).

related in scope to the circumstances which justified the interference in the first place.[18]

This Court in *Smith v. State* extracted the above *Terry* pat-down analysis and applied it to a valid traffic detention:

> we must determine "whether the officer's action (in pulling Smith over) was justified at its inception, and whether (the detention) was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, [supra at 20].[19]

Based thereon, this Court reversed in *Smith* because the defendant was stopped for failure to maintain a lane/DUI investigation, and in the midst of such, the investigating officer asked Smith whether he possessed drugs: "the officer proceeded to ask Smith questions that did not relate to his suspicion that Smith was driving under the influence and that did not relate to any traffic violations, but instead probed into Smith's possession of contraband."[20] We held that "[a]t the point the officer initiated this later probe, he went beyond the permissible scope of the investigation and his further detention of Smith went beyond that permitted by *Terry* and its progeny."[21]

Since then, *Smith* has been cited for the idea that, without articulable suspicion arising during the course of a lawful stop, an officer cannot ask traffic law enforcement questions unrelated to the *specific* traffic violation that caused the stop and to do so somehow creates a *Terry* violation.[22]

However, as the Eleventh Circuit clarified and held just this year,

> a police officer's questioning, even on a subject unrelated to the purpose of the stop, is not itself a Fourth Amendment violation. Mere questioning is neither a search nor a seizure. . . . [T]he issue regarding unrelated questions concerns not the content of the questions, but their impact on the duration of the stop. . . . Therefore, only unrelated

---

[18] Id. at 19-20.

[19] *Smith v. State*, supra at 454.

[20] Id. at 455 (2).

[21] Id. Interestingly, such determination based on the *questions* asked by the officer was not necessary to resolve the *Smith* case. The facts in Smith clearly established that the original traffic detention had ended and Smith was improperly held further in order for the officer to summon a K-9 unit.

[22] See, e.g., *State v. Sims*, 248 Ga. App. 277 (546 SE2d 47) (2001); *Almond v. State*, 242 Ga. App. 650, 652 (530 SE2d 750) (2000); *Lyons v. State*, 244 Ga. App. 658, 660 (535 SE2d 841) (2000); see also *State v. Milsap*, 243 Ga. App. 519, 521 (528 SE2d 865) (2000) (Ruffin, J., dissenting).

questions which *unreasonably* prolong the detention are unlawful; detention, not questioning, is the evil at which *Terry's* prohibition is aimed.[23]

Contrary to our holding in *Smith,* questions asked during a valid traffic stop are not confined solely to the specific violation that produced the stop, but may be "reasonably related" to the *purpose* for the stop, which purpose includes legitimate traffic law enforcement concerns.[24] The issue with regard to *Terry* is whether such questions "unreasonably prolong" an otherwise valid detention.

In that regard and since the underlying purpose of all *Terry* stops, traffic or otherwise, is to protect the public and prevent crime,[25] reasonable general investigative questions have always been permitted during valid traffic stops, regardless of the specific traffic offense that caused the stop, i.e., questions about travel plans, itinerary, ownership of the vehicle, information on passengers, and follow-up questions based on conflicting answers and any suspicious circumstances which may arise.[26] When, as in this case, a driver has been lawfully detained for a traffic violation, these general investigative questions are minimally intrusive and do not unduly prolong the lawful detention.

Also, the authority of an officer to ask a drug-related question during a valid traffic stop for speeding has been recognized: "Are you carrying any illegal contraband in your car? Any weapons of any kind, drugs anything like that?"[27] Such simple inquiry is "reasonably related" to the legitimate traffic enforcement safety concern of ridding our highways and interstates of the use of illegal narcotics and weapons; is minimally intrusive; and does not prolong an already valid detention.[28] During the course of a valid stop, such question is "not unconstitutionally intrusive in light of the problem of interstate

---

[23] (Citations and punctuation omitted; emphasis supplied.) *United States v. Purcell,* 236 F3d 1274, 1279-1280 (11th Cir. 2001).

[24] *Radowick v. State,* 145 Ga. App. 231, 237 (244 SE2d 346) (1978).

[25] See *United States v. Sharpe,* 470 U. S. 675, 685-686 (105 SC 1568, 84 LE2d 605) (1985) (" 'the purpose underlying a *Terry* stop [is] investigating possible criminal activity.' ").

[26] See, e.g., *United States v. Hardy,* 855 F2d 753 (I) (N.D. Ga. 1988); *Almond v. State,* supra; *State v. Hall,* 235 Ga. App. 412 (509 SE2d 701) (1998); *Sprauve v. State,* 229 Ga. App. 478 (494 SE2d 294) (1997); *Gamble v. State,* 223 Ga. App. 653, 655-656 (478 SE2d 455) (1996); *Sutton v. State,* 223 Ga. App. 721, 723-724 (478 SE2d 910) (1996); *Pitts v. State,* 221 Ga. App. 309 (471 SE2d 270) (1996); *Roundtree v. State,* 213 Ga. App. 793 (446 SE2d 204) (1994); *Benavides v. State,* 193 Ga. App. 737 (388 SE2d 886) (1989); *State v. Combs,* 191 Ga. App. 625 (382 SE2d 691) (1989); *O'Keefe v. State,* 189 Ga. App. 519, 520 (376 SE2d 406) (1988); *Lombardo v. State,* 187 Ga. App. 440 (370 SE2d 503) (1988); *Smith v. State,* 184 Ga. App. 304, 305-306 (361 SE2d 215) (1987); *Daugherty v. State,* 182 Ga. App. 730 (356 SE2d 902) (1987).

[27] *Ohio v. Robinette,* 519 U. S. 33, 38-39 (117 SC 417, 136 LE2d 347) (1996).

[28] See *Delaware v. Prouse,* 440 U. S. 648, 654 (99 SC 1391, 59 LE2d 660) (1979).

drug traffic."[29] So too, during an authorized traffic stop, the Fourth Amendment is not violated merely by requesting consent to search a vehicle for drugs.[30]

Similarly, regardless of the specific violation which causes a valid traffic stop, an officer may inquire into the status of a driver's license, insurance, and tag. Such investigative inquiries, while not directly related to the violation which produced the stop, are "reasonably related" to the State's "vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles [and] that these vehicles are fit for safe operation."[31] As such, these investigative inquiries do not "unreasonably prolong" a valid detention.

The majority cites as dispositive *State v. Sims*[32] and the Eleventh Circuit case of *United States v. Pruitt*.[33] But I suggest the application of these cases to the instant case demonstrates how very far we have come from legitimate *Terry* analysis.

In both *Pruitt* and *Sims*, the evidence showed that the officer had completed his investigation, had written out the tickets, and had given them to the respective drivers. The officers in each case then specifically required the driver to remain for 15 or 20 minutes after the ticketing in order for the officer to conduct a "fishing expedition" and investigate matters other than the reasons for the traffic stops. From such concrete evidence, it was not difficult to conclude that the officers' subsequent inquiries unreasonably prolonged the initial detention.

However, in this case, the officer had just stopped Gibbons; he had not yet ticketed Gibbons for the seat belt violation (which he did); there is absolutely no evidence that the brief, less than five-minute-long traffic stop was over when the officer asked for consent to search. The distinction is not fine. Here, without the concrete evidentiary support found in *Pruitt* and *Sims*, this Court finds — *from the content of the officer's investigative questions, alone* — a *Terry* violation in the *middle* of a valid traffic stop. I submit, this is an irrational outcome of *Smith v. State*.

Further, an appellate court's subjective interpretation of the contents of questioning is open to wildly variant results, as illustrated in this case where the majority states, "Rather than ticket Stinemetz or release him, the officer decided to conduct a drug investigation."

---

[29] *State v. Hall*, 235 Ga. App. 412, 415 (509 SE2d 701) (1998); see also *O'Keefe v. State*, supra at 525 (" 'The public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit.' ").

[30] *Kan v. State*, 199 Ga. App. 170, 171 (1), (2) (404 SE2d 281) (1991).

[31] *Delaware v. Prouse*, supra at 658; *Sutton v. State*, 223 Ga. App. 721, 723 (478 SE2d 910) (1996).

[32] Supra.

[33] 174 F3d 1215 (11th Cir. 1999).

However, as noted by the trial court, the officer in this case undisputedly asked no questions about drugs, but asked questions about "itinerary, destination, passenger, and activities." All of these general investigative questions have been considered lawful in previous opinions of this Court. See fn. 28, supra. To interpret such questions now as a "drug investigation" is pure speculation as to the officer's subjective intent in asking the lawful questions — when it is well established that an officer's subjective intent during lawful questioning plays no role in Fourth Amendment analysis: "We . . . foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."[34]

I also submit that to apply *Knowles v. Iowa*[35] to the instant case of brief investigative questioning, as urged by the majority, is to twist the frame of the Fourth Amendment even further. I candidly cannot fathom how a less than five-minute period of general investigative questioning prior to the issuance of a traffic ticket can be analogized to the full-blown automobile search invalidated in *Knowles*. Surely a result should be authorized by how it is reached.

"The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in *objective* terms by examining the totality of the circumstances."[36] To that end the law does not, I think, champion our holding in *Smith v. State* that the Fourth Amendment requires police officers to have the same "articulable suspicion" necessary to support a traffic stop in order to simply question *an already validly stopped driver* about matters reasonably related to traffic law enforcement, when such questioning does not "unreasonably prolong" a valid detention.[37]

While this Court has always been rightly sensitive to the danger that an officer will enlarge upon his authority to conduct a *Terry*-type search and seizure, our Fourth Amendment vigilance cannot permit us the equally offensive course of improperly expanding search and seizure law, thereby denying the people of Georgia the modicum of protection achieved through an officer's ability to investigate and enforce the law within the parameters of the constitution. Likewise, we cannot ask police officers to continue to stand the wall between

---

[34] *Whren v. United States*, 517 U. S. 806, 813 (116 SC 1769, 135 LE2d 89) (1996); *Garmon v. State*, 271 Ga. 673, 678 (3) (524 SE2d 211) (1999). See also *Stansbury v. California*, 511 U. S. 318, 323 (II) (114 SC 1526, 128 LE2d 293) (1994); *Hightower v. State*, 272 Ga. 42, 43 (2) (526 SE2d 836) (2000) (subjective intent of officer during questioning generally irrelevant for Fourth Amendment purposes).

[35] 525 U. S. 113 (119 SC 484, 142 LE2d 492) (1998).

[36] (Citation and punctuation omitted; emphasis supplied.) *Ohio v. Robinette*, supra at 39.

[37] *Whren v. United States*, supra at 817-819; *Delaware v. Prouse*, supra at 659-660.

the law-abiding and the lawless, if we are going to unjustifiably dismantle it brick by brick.

The trial court's determination that a *Terry* violation resulted when the officer asked questions unrelated to the seat belt violation is error as a matter of law. To the extent that our decision in *Smith v. State* supports the trial court's erroneous determination, it should be overruled. The judgment below should be reversed.

2. The bottle containing the residue of cocaine was found pursuant to a consensual search. No factual findings were made by the trial court with regard to this issue. Accordingly, this case should be remanded for further findings of fact as to the issue of consent with a right of further appeal.[38]

I am authorized to state that Judge Mikell joins in this dissent.

DECIDED MARCH 30, 2001.

*T. Joseph Campbell, District Attorney, Donald S. Smith, Assistant District Attorney*, for appellant.

*White, Choate & Watkins, Jay Choate, Cook & Connelly, Bobby Lee Cook, Rex B. Abernathy*, for appellees.

---

[38] See, e.g., *State v. Bassford*, 183 Ga. App. 694, 698 (2) (359 SE2d 752) (1987).