A01A1778. STOVALL v. THE STATE.
(553 SE2d 297)

ELDRIDGE, Judge.

A bench trial was held in the Superior Court of Henry County, and David Wilson Stovall was found guilty of possession of cocaine. He appeals, and upon review, we affirm.

A black truck was being driven recklessly, running people off the road. When the truck stopped at a BP gas station, a concerned citizen stopped too and called the police therefrom. When the police arrived at the BP, the concerned citizen directed the investigating officer to the driver of the truck, Stovall, who was standing at a bank of tele-

phones. Pursuant to Stovall's consent to a search of his pockets and wallet, several purple baggies of powdered cocaine were found therein. Following Stovall's arrest and a search of his truck, five syringes, two additional purple baggies of powdered cocaine, a rock of crack cocaine, a crack pipe, and a bottle of prescription codeine were also recovered. *Held*:

1. Stovall challenges the trial court's denial of his motion to suppress the drugs found pursuant to the consensual search of his pockets and wallet. He contends that, during the five minutes between the officer's approach and Stovall's arrest, the officer's questions were not sufficiently related to the reckless driving investigation for which Stovall was detained, which conduct is proscribed by our recent holding in *State v. Gibbons*, 248 Ga. App. 859, 863 (2) (547 SE2d 679) (2001), wherein we determined that "[a]n officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity." Based thereon, we reversed Gibbons' conviction for drug possession on Fourth Amendment search and seizure grounds because, during Gibbons' brief four-minute detention, the content of some of the officer's questions was unrelated to the seat belt violation for which he was stopped: "by asking questions unrelated to the seat belt violation, the trooper exceeded the authorized scope of the original stop."[1] As a consequence, we invalidated Gibbons' voluntary consent to search because "the continued detention became illegal because of the inappropriate questioning."[2] This resulted, even though

> a police officer's questioning, even on a subject unrelated to the purpose of the stop, is not itself a Fourth Amendment violation. Mere questioning is neither a search nor a seizure. The issue regarding unrelated questions concerns not the content of the questions, but their impact on the duration of the stop. Therefore, only unrelated questions which *unreasonably* prolong the detention are unlawful.[3]

Now, less than two months after the *Gibbons* decision, this Court is faced with one of what will most assuredly be many, many cases in which we are asked to divine precisely when an otherwise brief, legal detention becomes "illegal" due to the content of the investigative questions asked therein.

---

[1] *State v. Gibbons*, supra at 863.
[2] Id. at 868 (Ruffin, J., concurring specially).
[3] (Punctuation omitted; emphasis in original.) Id. at 870-871 (1) (Eldridge, J., dissenting), citing *United States v. Purcell*, 236 F3d 1274, 1279-1280 (11th Cir. 2001).

To that end, Stovall claims that, during a reckless driving investigation, the

> expected type of questions would be "can I see your license?" and "were you having trouble steering?" and "will you submit to some field sobriety tests?" and questions of this nature. Instead, the officer extends the search into a deep pocket search, then had the defendant remove the wallet from the back pocket. . . . [T]his is the bottom line — the officer exceeded the scope of permissible police investigation of a citizen who supposedly was driving recklessly.

We do not agree.

Although Stovall attempts to pound the square-peg facts of the instant case into the hole that is *Gibbons*, we are not dealing herein with questioning during a *Terry*-type detention; indeed, the officer in this case simply approached an already stopped Stovall and made inquiry; "[i]t is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a 'stop' or 'seizure' but rather 'clearly falls within the realm of the first type of police-citizen encounter.' "[4] What Stovall is actually challenging is the search of his wallet during a police-citizen encounter, and he claims that the search was unjustified.

However, the officer testified that Stovall would not answer his questions; was evasive; became increasingly nervous; had needle markings, i.e., "track marks," on his legs, one of which was bleeding from what appeared to the officer to be a fresh puncture wound; had been reported as driving dangerously; and would not keep his hands out of his pockets, even after a request to do so.[5] Thus, after the second time Stovall put his hands into his pockets, the officer asked, "Would you mind if I pat you down for weapons? That way, I don't have to worry about you sticking your hands in your pockets." Stovall consented. "Inasmuch as the search was justified based on consent, we need not address the issue of whether the search was also justified as a *Terry* pat-down frisk for weapons."[6]

Following the pat-down during which the officer felt several very large indeterminate objects in Stovall's front pockets and back pocket, the officer asked Stovall "if he would mind emptying his pock-

---

[4] *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999); *Voyles v. State*, 237 Ga. App. 886, 887 (517 SE2d 113) (1999).

[5] These factors are sufficient to objectively justify the officer's concern for his safety so as to conduct a pat-down search of Stovall's person, because "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968).

[6] *McNeil v. State*, 248 Ga. App. 70, 72 (545 SE2d 130) (2001).

ets." Stovall emptied his front pockets, which contained bullets, a wallet, and miscellaneous other items. However, he did not empty the back pocket. The officer asked Stovall if he would mind emptying the back pocket, and Stovall did; it contained another wallet which Stovall voluntarily handed to the officer. The officer asked him, "Do you have a problem with me searching through this wallet? And he [Stovall] said, 'No, I don't have a problem with it.'" The drugs were found pursuant to this consensual search of Stovall's wallet. "[R]equests to search made during the course of a first level police-citizen encounter do not transform such encounter into a second-tier *Terry* stop: 'it is clear that merely requesting consent for a search is not a seizure and does not require articulable suspicion.'"[7]

When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.[8] Here, the trial court specifically found that the officer "had the right to be where he was and ask the questions asked. And everything flowing from that was consented to willfully and voluntarily, without any threats, coercions." The record supports such finding. Accordingly, there was no error in denying Stovall's motion to suppress.

2. It was error, however, to refuse to consider Stovall for first offender treatment simply because he did not enter a plea, but opted for trial. We have held that "[t]he trial court's refusal to consider first offender status after a verdict is a refusal to exercise discretion."[9] Such holding, of course, in no way implies that first offender treatment must be granted to Stovall or to any other defendant requesting such. We hold only that first offender treatment, whether or not ultimately rejected, may not mechanistically be precluded without consideration on the merits as a part of the exercise of the trial court's discretion during sentencing.

*Judgment of conviction affirmed, sentence vacated and case remanded for resentencing. Andrews, P. J., and Miller, J., concur.*

DECIDED JULY 31, 2001.

*Lloyd J. Matthews*, for appellant.

---

[7] *State v. Ledford*, 247 Ga. App. 412, 414 (1) (a) (543 SE2d 107) (2000).
[8] *McBride v. State*, 246 Ga. App. 151, 152 (539 SE2d 201) (2000).
[9] *Jackson v. State*, 244 Ga. App. 477, 479 (3) (535 SE2d 818) (2000).

*Tommy K. Floyd, District Attorney, Sandra A. Graves, Assistant District Attorney*, for appellee.