## A03A0107. THOMAS v. THE STATE.
### (583 SE2d 207)

RUFFIN, Presiding Judge.

A jury acquitted Trampus Thomas of distributing cocaine within 1,000 feet of a school, but found him guilty of trafficking in cocaine. On appeal, Thomas challenges the sufficiency of the evidence and the trial court's denial of his motion to suppress. He also contends the state impermissibly placed his character in issue during the testimony of a witness. For reasons that follow, we affirm.

1. In considering Thomas's challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the jury's verdict and determine whether the evidence was sufficient to authorize a rational trier of fact to find Thomas guilty beyond a reasonable doubt.[1] Moreover, we do not weigh the evidence or assess witness credibility.[2]

Viewed in this light, the evidence shows that on October 10, 1997, Thomas, Montago Kendrix, and Barry Holland drove to a fast food restaurant in a black Nissan owned by Holland's girlfriend.

---

[1] See *Kier v. State*, 247 Ga. App. 431-432 (1) (543 SE2d 801) (2000).
[2] See id. at 431.

Thomas went inside the restaurant while Kendrix and Holland waited for him.

While Kendrix and Holland sat in the car, another vehicle pulled up next to them, and the driver asked about Thomas's location. Kendrix replied that Thomas was inside the restaurant. The man got out of the vehicle, placed a brown paper bag inside the front of his pants, and walked to the restaurant. A few minutes later, Thomas returned to the Nissan and sat in the driver's seat. Kendrix observed Thomas pull a brown paper bag out of the front of his pants and place it between the car's front seats. According to Kendrix, the brown paper bag contained drugs. Thomas then drove away from the restaurant.

Agents Mike Morrison and Patrick Skinner, who were returning from a crime lab in an undercover vehicle, happened to drive alongside the Nissan on I-20. At that point, Thomas was driving, Holland was in the front passenger seat, and Kendrix was in the back seat. Agent Morrison recognized Thomas and informed Agent Skinner that Thomas's driver's license had been suspended. Because they were not in a marked police car, however, the agents did not stop the Nissan.

The officers lost sight of the car when Thomas veered off at the next exit. After leaving the highway, Thomas stopped the car and asked the occupants to switch seats. Holland took the wheel, Kendrix moved to the front passenger seat, and Thomas sat in the back. A short time later, the officers saw the Nissan again, and they followed it while they tried to contact a marked police unit to conduct a traffic stop.

Aware that they were being followed, Thomas told Holland to lose the officers. Thomas also directed Kendrix to empty the contents of the brown paper bag into Kendrix's cup, and Kendrix complied. Kendrix testified that he tried to give the cup to Thomas, but Thomas refused it and exclaimed: "[G]et it, man. You'll get probation, man. This is your first offense." At Thomas's direction, Kendrix attempted to dissolve the drugs into fruit punch in his cup.

Agents Morrison and Skinner observed the Nissan speed up and pass a school bus while its stop sign was out, its lights were flashing, and children were exiting. Concerned about this reckless conduct, the agents decided to stop the car and pulled alongside the Nissan at a stop sign. When the officers approached the vehicle and identified themselves, Holland admitted he did not have a valid driver's license. At that point, Agent Morrison realized Thomas was now in the back seat rather than driving.

While the agents were speaking to the occupants of the vehicle, Agent Skinner noticed that Kendrix had his hand inside a drinking cup and appeared to be squeezing something. Agent Morrison also observed Thomas in the back seat pushing the buttons on his pager.

According to Morrison, it appeared Thomas was either trying to read or delete information from the pager. The officers testified that all three men were visibly "shaken."

Suspecting that Kendrix was trying to dissolve narcotics, Agent Skinner asked Kendrix what was in the cup, and Kendrix replied that there was nothing in it. Agent Skinner asked Kendrix if he could look in the cup, and Kendrix handed it to him. Agent Skinner poured out the fruit punch and discovered 62 grams of 57 percent pure cocaine wrapped in gauze at the bottom of the cup.

Thomas then asked to speak with Agent Morrison. Morrison agreed, but first read Thomas his *Miranda* rights. At that point, Thomas volunteered to purchase nine ounces of cocaine for the agents, presumably in an undercover setting, if they dropped the charges. The agents informed Thomas that they were unwilling to make any deals with him.

Thomas, Kendrix, and Holland were indicted for trafficking in cocaine and distributing cocaine within 1,000 feet of a school. The jury subsequently found Thomas guilty of cocaine trafficking, but not guilty of distributing cocaine near the school. The state called both Kendrix and Holland to testify against Thomas at trial, but only Kendrix indicated the cocaine belonged to Thomas.

On appeal, Thomas contends the state failed to present evidence that he ever possessed the cocaine. We disagree. Possession may be actual or constructive.[3] " 'A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.' "[4] Kendrix testified that Thomas brought the cocaine to the car and told Kendrix to place it in the cup. And although Holland did not corroborate all of Kendrix's testimony, he testified at trial that Thomas told Kendrix to pull the cocaine from under the front car seat when the officers approached, and Kendrix complied. Finally, when confronted by the police, Thomas offered to "make a deal" with the officers. Under these circumstances, a reasonable jury could find that Thomas exercised dominion and control over the cocaine and thus had constructive possession of it.[5]

Thomas also argues the testimony of his two co-defendants "lacked even a scintilla of credibility in that their testimony was purchased for the price of two . . . probated prison sentences." The

---

[3] See *Stevens v. State*, 245 Ga. App. 237, 238 (1) (537 SE2d 688) (2000).

[4] *Young v. State*, 242 Ga. App. 681, 683 (1) (530 SE2d 758) (2000).

[5] See id.; *Gamble v. State*, 223 Ga. App. 653, 654-655 (1) (478 SE2d 455) (1996). See also *Cooper v. State*, 237 Ga. App. 837, 838 (2) (517 SE2d 85) (1999) (" '[T]he testimony of an accomplice tending to connect the accused to the crime will support a jury's verdict if supported by slight evidence, which may be circumstantial.' "); OCGA § 24-4-8.

record shows that Thomas's attorney thoroughly cross-examined both Kendrix, who pled guilty to two lesser offenses before trial, and Holland, regarding their motives for testifying. Furthermore, although Holland later reached a plea agreement with the state, he had not struck a deal at the time he testified. The credibility of witnesses, their truthfulness, and any ulterior motives attributable to them are matters to be weighed by the jury.[6] Given the evidence presented, the jury was authorized to find Thomas guilty of trafficking in cocaine.[7]

2. Thomas also argues that the trial court erred in denying his motion to suppress the cocaine found in the vehicle.

> In reviewing a trial court's order on a motion to suppress evidence, we consider three principles: (1) the trial judge sits as the trier of facts, and we will affirm his findings on conflicting evidence if any evidence supports them; (2) we accept the trial court's decision as to questions of fact and credibility unless they are clearly erroneous; and (3) we construe the evidence most favorably to upholding the trial court's findings and judgment.[8]

Furthermore, on appeal from the denial of a motion to suppress, we may consider the evidence presented at the hearing on the motion to suppress, as well as that adduced during trial.[9]

(a) Thomas first claims the trial court erred in concluding he lacked standing to challenge the seizure of the cocaine. The record reflects that Thomas denied any possessory interest in the cocaine, and the state argued he lacked standing to file a motion to suppress. The trial court, however, "assume[d] that standing [was] proper" and found that "the evidence should not be suppressed." Clearly, the trial court did not base its ruling on lack of standing.

(b) Thomas also asserts the trial court erred in finding the police had a reasonable suspicion of criminal activity to justify the investigative stop. We find no error. Before stopping a car, "an officer must have specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct."[10] A traffic offense provides the necessary facts for such reasonable suspicion. When an officer witnesses a traffic offense, a resulting traffic stop does not violate the Fourth Amendment, regardless of the officer's motives for initiating the

---

[6] See *Rucker v. State*, 272 Ga. 750, 752 (2) (534 SE2d 71) (2000).

[7] See OCGA § 16-13-31 (a) (1).

[8] *Daniel v. State*, 260 Ga. App. 732 (580 SE2d 682) (2003).

[9] See *Davidson v. State*, 257 Ga. App. 260, 261 (570 SE2d 698) (2002).

[10] *State v. Harris*, 236 Ga. App. 525, 526-527 (1) (513 SE2d 1) (1999).

stop.[11] Even where the traffic violation is minor, "a suppression motion arguing that the stop was pretextual must fail."[12]

It is undisputed that Thomas was spotted by Agent Morrison driving on I-20. At the time, Agent Morrison knew that Thomas's license was suspended. We have previously held that where an officer is aware that a defendant's license has been suspended and subsequently sees him driving, this amounts to specific and articulable facts that justify an investigative stop.[13] Furthermore, the officers observed the Nissan passing a school bus while its lights were flashing and children were exiting. This traffic offense justified the stop.[14]

Citing OCGA § 40-8-91, Thomas argues that the officers were not permitted to conduct a traffic stop in an unmarked vehicle. Nothing in that Code section, however, invalidates traffic arrests, or investigatory stops, made in an unmarked vehicle.[15] Furthermore, an officer in an unmarked car may stop an erratic driver.[16] Holland's conduct in passing the school bus authorized the stop, even by an unmarked car.[17]

Thomas further alleges that, even if the initial traffic stop was justified, the agents impermissibly expanded the scope of that stop by inquiring about the cup and requesting consent to search it. Citing *Migliore v. State of Ga.*,[18] Thomas argues the mere nervousness on the part of the Nissan's occupants did not justify his subsequent detention. Pretermitting whether the agents expanded the scope of the initial traffic stop, the record shows that they had reasonable articulable suspicion to do so.[19] Despite Thomas's claims, Skinner did not inquire about the cup based solely on the occupants' nervousness. As he testified, his suspicions of criminal conduct were grounded in: "the nervousness, the passing the school bus, the swapping of the passenger and the driver. All that put together brings about a little heightened suspicion on your part that there may be something more to what's going on than just a driving or traffic violation."

Agent Skinner also found it unusual that Kendrix had his hand in a drinking cup, and suspected that Kendrix might be trying to dis-

---

[11] Id. at 527.

[12] Id.

[13] Id. at 526-527.

[14] See OCGA § 40-6-163 (a).

[15] See *State v. Carter*, 215 Ga. App. 647, 648 (451 SE2d 541) (1994); *Barron v. State*, 157 Ga. App. 186, 188-189 (3) (276 SE2d 868) (1981).

[16] See *Carter*, supra.

[17] See id.

[18] 240 Ga. App. 783, 786 (525 SE2d 166) (1999).

[19] *State v. Sims*, 248 Ga. App. 277, 279 (546 SE2d 47) (2001) ("[I]f the officer *continues to detain* the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop.").

solve narcotics. Kendrix's conduct, coupled with the other factors cited by Skinner, gave the agents reasonable articulable suspicion of criminal activity, thereby justifying the detention.[20]

Having concluded that the agents did not improperly detain the Nissan's occupants, we now consider whether Kendrix's consent to the search of the cup was voluntary. " 'A valid consent eliminates the need for either probable cause or a search warrant.' "[21]

> [C]ourts determine the voluntariness of consent by examining the totality of the circumstances, including the age of the accused, his education and intelligence, the length of detention, whether he was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of these factors.[22]

The burden rests on the state to establish that consent was freely and voluntarily given.[23]

Applying this standard, the evidence shows that Kendrix graduated from high school and completed two years of college. At the time of his testimony, he was 23 years old, and he was approximately 21 years of age when this incident occurred. Agent Skinner testified that he asked Kendrix if "he minded [Skinner] looking" in the cup. Kendrix said "no" and handed the cup to Skinner without hesitation. The trial court was authorized to find Kendrix's consent to the search was voluntarily given, and "not the product of coercion, duress, or deceit."[24] Accordingly, the trial court did not err in denying Thomas's motion to suppress.

3. Finally, Thomas contends the trial court should have granted his motion for a mistrial because the state elicited improper character evidence from Kendrix. The record shows the state instructed Kendrix to refrain from mentioning Thomas's past criminal conduct or any jail time Thomas may have served. Nonetheless, Kendrix vaguely indicated on direct that the man looking for Thomas at the restaurant had met Thomas in jail. Thomas moved for a mistrial. The trial court denied the motion, but gave a curative instruction to the jury. And, although Thomas renewed his motion for a mistrial prior to the trial court's giving of the curative instruction, his failure

---

[20] See *Almond v. State*, 242 Ga. App. 650, 652-653 (1) (530 SE2d 750) (2000); *Thompson v. State*, 230 Ga. App. 131, 132 (495 SE2d 607) (1998).

[21] *Sutton v. State*, 223 Ga. App. 721, 724 (1) (478 SE2d 910) (1996). See also *Langston v. State*, 202 Ga. App. 431, 433 (414 SE2d 676) (1992).

[22] (Punctuation omitted.) *State v. Jackson*, 201 Ga. App. 810, 815 (2) (412 SE2d 593) (1991).

[23] See *Sutton*, supra.

[24] See id.

to do so afterward waives the issue.[25] Thus, this claim of error provides nothing for review.[26]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 5, 2003.

*Word & Simmons, Maryellen Simmons*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.

---

[25] See *Ford v. State*, 269 Ga. 139, 141 (3) (498 SE2d 58) (1998) (defendant waived issue when he did not renew motion for mistrial after curative instruction).

[26] See id.