A01A0364. HENDERSON v. THE STATE.
(551 SE2d 400)

MILLER, Judge.

Following a bench trial, Matthew Joseph Henderson was convicted of a seat belt violation and possession of methamphetamine. In his sole enumeration of error, Henderson challenges the denial of his motion to suppress. We discern no error and affirm.

Construed in favor of the trial court's ruling,[1] the evidence shows that two officers initiated the stop of Henderson's vehicle because neither Henderson nor his passenger was wearing a seat belt. A videotape of the stop shows that once the officers stopped Henderson, they informed him that he was going to be cited for a seat belt violation. Officer Prince immediately began writing the citation, which he

---

pursued diligently for the next four minutes. Less than two minutes into Officer Prince's writing of the citation, Officer Wilkinson asked Henderson if he had any weapons or drugs in the vehicle, to which Henderson responded that he did not. Officer Wilkinson then asked for consent to search the vehicle for illegal weapons or drugs. Henderson consented, and the officer began the search. Officer Prince two minutes later completed the citation and handed it to Henderson, and three minutes later Officer Wilkinson found methamphetamine in the pocket of a pair of pants located on the backseat of the vehicle.

Henderson argues that Officer Wilkinson impermissibly expanded the scope of the traffic stop by questioning him about weapons and drugs. He contends this type of questioning was unrelated to the seat belt violation. Henderson does not argue that Officer Wilkinson's questioning of him about weapons and drugs extended or prolonged the detention. Indeed, the videotape plainly shows that Officer Wilkinson's questions to Henderson in no way delayed, extended, prolonged, or interrupted Officer Prince's writing of the citation.

We note initially that the stop of Henderson's vehicle was permissible as it was based on probable cause.[2] During this valid traffic stop, Officer Wilkinson asked Henderson about weapons and drugs and then asked for consent to search. Henderson claims that the police officer's mere asking of the questions, which admittedly did not prolong the stop, was in and of itself a violation of his constitutional rights and rendered his consent invalid. We have previously rejected such a notion. " 'Having already effected a valid stop of the vehicle, the trooper certainly did not violate the appellant's Fourth Amendment rights merely by requesting such consent.' "[3]

Indeed, just a few months ago in *State v. Sims*,[4] we again rejected this notion. There the trial court had held "that by asking the Defendant about drugs and then asking for consent to search, [the officer] exceeded the scope of the permissible investigation by turning a completed traffic stop into an investigation for drugs, something that is expressly prohibited. . . ."[5] Holding the trial court misstated the law, we explained that "[i]n deciding whether the question about drugs and weapons, standing alone, was unreasonable, we

[2] *Harris v. State*, 239 Ga. App. 537, 540 (2) (a) (521 SE2d 462) (1999); *Davis v. State*, 232 Ga. App. 320, 321 (1) (501 SE2d 836) (1998).

[3] *Kan v. State*, 199 Ga. App. 170, 171 (2) (404 SE2d 281) (1991), quoting *Pupo v. State*, 187 Ga. App. 765, 766 (2) (371 SE2d 219) (1988); accord *Gamble v. State*, 223 Ga. App. 653, 656 (3) (478 SE2d 455) (1996).

[4] 248 Ga. App. 277 (546 SE2d 47) (2001).

[5] Id. at 278.

note that 'mere police questioning does not constitute a seizure.' "[6] Only "if the officer *continues to detain* the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity . . ." does the officer exceed the scope of a permissible investigation of the initial traffic stop.[7] *Sims* reiterated that absent an articulable suspicion of another crime, an officer exceeds the scope of permissible investigation for a traffic stop only if the officer "questions *and detains* a suspect for other reasons. . . ."[8]

Thus, it is not the nature of the questions which offends the Fourth Amendment; it is whether in asking the questions the officer impermissibly *detains* the individual beyond that necessary to investigate the traffic violation precipitating the stop. That is a key point focused on recently by this Court in *State v. Gibbons*.[9] There the officer, who acting alone had stopped the driver for a seat belt violation, made no attempt to investigate the seat belt violation but rather launched into an extensive series of unrelated questions that eventually led to the discovery of illegal drugs on the driver's person.[10] Only later did he write the seat belt citation.[11] We upheld the suppression of the drugs, emphasizing in Presiding Judge Pope's special concurrence (joined in by six other judges and quoting from *Sims* extensively) the trial court's finding that " '[r]ather than ticket [the driver] or release him, the officer decided to conduct a drug investigation.' It is this *continued detention* that makes the questioning and request to search without reasonable suspicion of criminal activity impermissible."[12]

The second special concurrence agreed. Citing *United States v. Pruitt*,[13] Judge Ruffin wrote about the evils of postponing the writing of the traffic ticket and of lengthening the detention for further questioning.[14] As stated by the Eleventh Circuit in *United States v. Purcell*,[15] "only unrelated questions which unreasonably prolong the detention are unlawful; detention, not questioning, is the evil at which *Terry*'s prohibition is aimed. Questions which do not extend the duration of the initial seizure do not exceed the scope of an otherwise constitutional traffic stop."[16]

---

[6] Id., quoting *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991).

[7] (Emphasis in original.) *Sims*, supra, 248 Ga. App. at 279.

[8] (Emphasis in original.) Id. at 280.

[9] 248 Ga. App. 859 (547 SE2d 679) (2001).

[10] Id. at 860-863 (2).

[11] See id. at 872 (Eldridge, J., dissenting).

[12] (Emphasis supplied.) Id. at 864 (Pope, P. J., concurring specially).

[13] 174 F3d 1215 (11th Cir. 1999).

[14] *Gibbons*, supra, 248 Ga. App. at 868 (Ruffin, J., concurring specially).

[15] 236 F3d 1274 (11th Cir. 2001).

[16] (Citation and punctuation omitted.) Id. at 1280 (II) (B).

On the same day we decided *Gibbons*, we also decided *Berry v. State*,[17] which held similarly. During the traffic stop in *Berry,* an officer queried the driver about the driver's travel plans, the weather, the driver's son, and the driver's truck and then asked the driver if he had any weapons or drugs in his car and if the officer could search the vehicle.[18] The driver stated that he had nothing like this and refused to consent to a search.[19] After abandoning his investigation of the traffic violation, the officer then nevertheless detained the driver so that the officer could have a police dog do a free-air search around the vehicle.[20] We held that the "further detention" was unreasonable, not the questions asked.[21] Indeed, we emphasized that the questions were reasonable and routine. "[W]e are obliged to point out that the questions asked by the officer are part and parcel of the questioning routinely done by officers in the course of these traffic stops."[22] We explained that such questioning, "which is rarely if ever directed toward the reason for the initial stop," allows the officers to later testify about inconsistent or evasive responses, discrepancies in travel plans, variations between the driver's and passenger's responses, and unwarranted nervousness.[23]

Here the questions about weapons and drugs and the request to search did not prolong, continue, or otherwise extend Henderson's detention. Officer Prince was less than two minutes into filling out the citation for the seat belt violation when Officer Wilkinson asked Henderson about weapons and drugs and asked for consent to search the vehicle. Thus, at the time consent was given, the police had done nothing improper, and the consent was valid. Although the search of Henderson's vehicle continued for three minutes after the traffic citation was handed to him, he had voluntarily consented to the search before the processing of the traffic violation was complete. Thus, the search was proper,[24] and the lack of probable cause or reasonable suspicion of drug activity at the time this permission was granted did not invalidate the consent.[25]

The court did not err in denying Henderson's motion to suppress.

*Judgment affirmed. Andrews, P. J., concurs. Eldridge, J., concurs specially.*

---

[17] 248 Ga. App. 874 (547 SE2d 664) (2001).

[18] Id. at 875-877.

[19] Id. at 877.

[20] Id. at 881 (4).

[21] Id.; see id. at 887 (Ruffin, J., concurring specially) ("the *period* of detention was unnecessarily long because the officer delved into these other matters") (emphasis in original).

[22] Id. at 882 (4).

[23] Id.

[24] *Gamble v. State*, 223 Ga. App. 653, 656 (3) (478 SE2d 455) (1996).

[25] *Santana v. State*, 197 Ga. App. 204 (1) (397 SE2d 629) (1990).

ELDRIDGE, Judge, concurring specially.

I concur with the judgment in this case. I write because it bears recognition that not four months after deciding *State v. Gibbons*, 248 Ga. App. 859 (547 SE2d 679) (2001), we are trying to find a way around its irrational holding, which has already become the basis for numerous appeals.

No matter how artfully the majority attempts to distinguish this case from *Gibbons* by suggesting two officers make a difference because the drug questioning does not then "prolong" a valid seat belt detention, there is no difference between *Gibbons* and the instant case.

Here, as in *Gibbons*, in the middle of a brief (four-minute) lawful detention for seat belt violation, an officer asked about drugs and requested consent to search. In *Gibbons*, this Court held specifically that it was the *content* of the officer's questions, themselves, that made the detention illegal.[26] That is why the entire colloquy between the police officer and the detainee was cited by the majority in *Gibbons*[27] when affirming the trial court's finding that "by asking questions unrelated to the seat belt violation, the trooper exceeded the authorized scope of the original stop."[28] As further stated by Judge Ruffin in his special concurrence, which was joined by four judges, including the author of the current majority:

> The officer only had probable cause to stop the driver for a specific traffic violation, and the permissible scope of the detention was limited to investigating and prosecuting only that violation. . . . The officer's probing interrogation was unrelated to the [seat] belt violation, no matter when it occurred. . . . [T]he continued detention *became illegal because of the inappropriate questioning*.[29]

In both *Gibbons* and *Berry v. State*,[30] decided at the same time, the detentions were no longer than the one in the instant case. In fact, in *Berry*, the officer and Berry were waiting for information to come back from a police radio check on Berry's license and registration when the K-9 free-air search was conducted; thus, the K-9

---

[26] Contrary to the majority's assertion, only two judges — not six — joined with Judge Pope's special concurrence in *Gibbons* which tried to temper the effect of the majority opinion. Unfortunately, it could not because the facts in *Gibbons* could not be altered, i.e., during a brief (four-minute) valid detention for seat belt violation, the officer questioned Gibbons about drugs before issuing him a citation.

[27] Supra at 860-863.

[28] Id. at 863.

[29] (Emphasis supplied.) Id. at 868 (Ruffin, J., concurring specially).

[30] 248 Ga. App. 874 (547 SE2d 664) (2001).

search did not "prolong" the detention.

And giving pause especially is the majority's invocation of *United States v. Purcell*,[31] which held "a police officer's questioning, even on a subject unrelated to the purpose of the stop, is not itself a Fourth Amendment violation. Mere questioning is neither a search nor a seizure."[32] *Purcell*, cited only in dissent by this writer, was ignored completely by the *Gibbons* majority.[33]

In a word, I concur with the judgment in this case. I welcome the retrenchment from *Gibbons*. And I predict ever more novel and interesting methods of attempting to circumvent its eminently wrongheaded holding until reversal is finally demanded — or, as reflected in the instant case, sufficient contrary precedent is established to allow us to disregard *Gibbons* totally as we evolve into the law as put forward in *Purcell*, i.e., "only unrelated questions which *unreasonably* prolong the detention are unlawful."[34]

DECIDED JUNE 29, 2001 — 

*Gilbert J. Murrah*, for appellant.
*J. Brown Moseley, District Attorney*, for appellee.

---

[31] 236 F3d 1274 (11th Cir. 2001).
[32] Id. at 1279-1280.
[33] *State v. Gibbons*, supra at 870-871 (Eldridge, J., dissenting).
[34] Id., citing *United States v. Purcell*, supra at 1280.