## A02A1307. BLOUNT v. THE STATE.
(570 SE2d 705)

MIKELL, Judge.

Following the denial of his motion in limine, in which he sought to suppress the results of his breath test, Herbert V. Blount IV was convicted of violating OCGA § 40-6-391 (k). That statute prohibits a person under the age of 21 from driving while his alcohol concentration is 0.02 grams or more. On appeal, Blount contends that the trial court erred in denying his motion in limine because the stop of his vehicle was not supported by reasonable and articulable suspicion. We disagree and affirm.

Three principles guide appellate review of the trial court's denial of a motion to suppress evidence:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

So viewed, the evidence shows that at approximately 12:30 a.m. on July 17, 2001, Carla Huddleston was putting a glass of water in the sink when she noticed a light on outside her house. She looked up and saw a man sitting in her father's van. Ms. Huddleston went upstairs and woke her parents. While her father went outside, Ms. Huddleston called the police. She described the suspect, whom she observed from the rear, as a thin, clean-cut, white young man, of medium height, with dark, dirty-blonde hair, and wearing a dark shirt, dark shoes, and jeans.

Sergeant Jay Thompson of the Fayette County Sheriff's Department testified that when he arrived at the Huddleston home, the door to the van was open and a beer can was lying on the floorboard. According to Sergeant Thompson, there was dew on the ground, and the suspect had left track marks across the yard. The tracks led into a wooded area in the subdivision. Sergeant Thompson testified that deputies flooded the area searching for the suspect but lost track of him in the woods. He further testified that only one road led into the

---

[1] *Stokes v. State*, 238 Ga. App. 230 (518 SE2d 447) (1999), citing *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

subdivision. According to Sergeant Thompson, there was no vehicular or pedestrian traffic in the subdivision when the search began between 12:30 a.m. and 1:00 a.m.

Finally, at 1:35 a.m., Sergeant Thompson spotted a pickup truck on the road exiting the subdivision. He testified that the truck had dew across the windshield and the hood, making it appear as though the truck had been sitting stationary for quite some time. Sergeant Thompson was unable to see inside the vehicle. When the truck turned out of the subdivision, Sergeant Thompson pulled it over. Sergeant Thompson testified that based on his 12 years of law enforcement experience, he suspected that the person for whom they were searching might have stolen a vehicle, given his earlier behavior. The fact that the truck had been recently started after sitting for a long period of time aroused his suspicions even further.

Based on this testimony and argument of counsel, the trial court ruled that articulable suspicion existed to justify the stop of the vehicle to determine whether the driver matched the suspect's description. Accordingly, the court denied Blount's motion in limine.

In defining what cause is sufficient to authorize police to stop and detain a person, the United States Supreme Court has determined that courts should take the totality of the circumstances into account and determine whether the detaining officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."[2] The determination contains two elements.

> First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person. . . . The second element . . . is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.[3]

The evidence in this case satisfies *Cortez*. When he stopped the truck, Sergeant Thompson, a trained law enforcement officer, was in the midst of a manhunt in a quiet residential subdivision otherwise devoid of pedestrian or vehicular traffic. Deputies had failed to locate

[2] *United States v. Cortez*, 449 U. S. 411, 417-418 (II) (A) (101 SC 690, 66 LE2d 621) (1981).
[3] Id. at 418.

the suspect in the woods. Based on his training and experience, it was reasonable for Sergeant Thompson to suspect that the individual, who had already entered a vehicle without permission, was attempting to flee utilizing a different vehicle. In addition, the truck which was stopped was covered with a layer of dew so thick that Sergeant Thompson was unable to see inside, leading to the logical conclusion that it had been started recently and from a nearby location. It was thus reasonable to suspect that whoever was driving the truck was the person observed by Ms. Huddleston. The brief investigatory stop to determine whether the driver matched the suspect's description was warranted under the totality of the circumstances. There was no error.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2002.

*Sexton & Morris, Lee Sexton, Joseph S. Key*, for appellant.
*Steven L. Harris, Solicitor-General*, for appellee.