## A03A1462. EVANS v. THE STATE.
### (586 SE2d 400)

ELDRIDGE, Judge.

Following a bench trial in the Superior Court of Wilkes County, Howard Evans was found guilty of trafficking in cocaine and a seat belt violation. He appeals and challenges the denial of his motion to suppress as well as the sufficiency of the evidence against him. Because Evans' enumerated claims are without merit, we affirm.

1. On motion to suppress evidence, the trial judge sits as the trier of the facts and hears the evidence;

> his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them].[1]

A reviewing court "must also construe the evidence most favorable to the upholding of the trial court's findings and judgment and must not disturb the findings of the trial judge unless no evidence exists to support them."[2]

With these principles in mind, we have reviewed the trial court's extensive findings of fact as set out in its order on Evans' motion to suppress. These factual findings are supported by both testimonial evidence from State Trooper B. Erickson, who was the only witness to testify, and a videotape made during the stop; thus, recitation here is authorized:

> Georgia State Patrolman [B.] D. Erickson, was patrolling in Wilkes County, Georgia, near the end of his shift on May 1, 2001. He came upon the defendant operating a vehicle on Hospital Drive in the City of Washington, Wilkes County, Georgia. The trooper observed that the defendant was not wearing a seatbelt. The defendant was leaning over as if he were reaching for something, which later turned out

---

[1] (Citation omitted.) *State v. Swift*, 232 Ga. 535, 536 (1) (207 SE2d 459) (1974).
[2] (Citation and footnote omitted.) *State v. Wilson*, 257 Ga. App. 120 (570 SE2d 409) (2002).

to be fried chicken, and, obviously to the trooper, did not notice him. The trooper observed that when the defendant did notice him, he appeared startled and immediately made a left turn.

The trooper knew that the street onto which the defendant was turning came back onto the street he was on, so he went around the block to make a determination as to whether or not the defendant, after his turn, was going to resume traveling in the same direction from which he turned. If he did not, the trooper candidly testified that he did not intend to make the stop; however, if he did proceed in the same direction he was previously going, then he was going to assume that the defendant was making an intentional effort to evade him. If so, the trooper testified that he would suspect one of three things: that defendant was driving with a suspended license, was driving under the influence of some intoxicant, or had drugs in the vehicle. Upon relocating the defendant, the trooper learned that defendant was in fact traveling in the same direction he was previously traveling, and effectuated a traffic stop.

As the trooper approached the vehicle the defendant said that he had a driver's license but did not have it on him. The trooper then got the defendant's license number and date of birth and while doing so noticed that the ashtray in the car was open and contained a burnt cigar. He further noticed a box of cigars partially full. The trooper testified that in his experience this particular brand of cigar was a popular one to make into "blunts." Those engaging in the use of marijuana would take such cigars, remove the tobacco, and replace it with marijuana. Further the officer testified that the defendant was extremely nervous, so much so that he could see his heart beat through his shirt. The trooper learned that the car did not belong to the defendant and also noticed that the defendant was repeating his questions back to him, which in the officer's experience was an indication that defendant was giving misleading information. He inquired about drugs in the car and indicated to the defendant he was going to call for a drug dog. The trooper then returned to his car and called in the driver's license information given him by the defendant. He did inquire about the possibility of bringing a drug dog to the scene, but one was not available and this was not done.

When the trooper received the information on his request that the defendant did have a valid driver's license, he had the defendant get out of his car, and began to take

the information from him as to his address, identification, etc. and began writing him a citation for not wearing his seatbelt. While writing the citation the trooper asked the defendant if he could search his vehicle. The defendant responded that he could, but if he found anything it was not his. After finishing writing the citation the trooper discussed it with the defendant, had him sign it, however, did not give the citation to him. He then informed the defendant exactly what portions of the vehicle he intended to search and informed him that if he found something he would probably simply confiscate it and not charge the defendant. The trooper testified that he said that because he believed what he would find was less than an ounce of marijuana. However, the trooper, while searching the area he told the defendant he would search, found a trafficking amount of crack cocaine.

The entire stop up to the point the trooper found the cocaine lasted approximately ten minutes, and approximately two minutes from the time the officer received the driver's license information.

In addition, our review of the videotape pertinently reveals that Trooper Erickson was writing out the citation for the seat belt violation at the time he asked Evans for permission to search the car; that there was no delay between obtaining the radio information about the validity of Evans' license and the time in which the citation was filled out; that it was necessary for the trooper to obtain additional information from Evans since Evans did not have his driver's license with residential information; that the trooper retained possession of Evans' ticket only after permission to search was obtained; and that, after the cocaine was located pursuant to the consent search, Trooper Erickson confirmed to Evans he had believed him to be in possession of contraband based upon his evasive driving, his physical reactions to the trooper, and the suspected contraband material seen in plain view in Evans' vehicle.

Before this Court, Evans contends that the trial court erred in denying his motion to suppress the cocaine found during a search of the vehicle he was driving. In so doing, Evans does not challenge the legality of the initial stop. Nor does he claim that his consent to search the vehicle was not knowing and voluntary. Evans' sole claim is that Trooper Erickson did not have a reasonable articulable suspicion of criminal wrongdoing at the time he began questioning Evans about drugs in the vehicle, thereby "exceeding the scope" of a seat belt violation stop. We disagree.

(a) Under the Fourth Amendment's proscription against unreasonable seizures,

> [a]n officer must have reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle once a normal traffic stop has ended and the officer has told motorists they are free to go.[3]

The evil to be avoided occurs when an officer "*continues to detain* the subject after the conclusion of the traffic stop" without reasonable suspicion of criminal activity.[4] This unsupported "additional detention," not police questioning, constitutes the Fourth Amendment violation, because, of course, "mere police questioning does not constitute a seizure."[5] "A seizure within the context of the Fourth Amendment occurs only when 'by means of physical force or a show of authority a reasonable person would have believed that he was not free to leave.' [Cit.]"[6]

> As stated by the Eleventh Circuit in *United States v. Purcell,* [supra at 1280,] "only unrelated questions which unreasonably prolong the detention are unlawful; detention, not questioning, is the evil at which *Terry*'s prohibition is aimed. Questions which do not extend the duration of the initial seizure do not exceed the scope of an otherwise constitutional traffic stop."[7]

In this case, the drug questions asked by Trooper Erickson did not prolong the traffic detention. The videotape reveals no undue delay between obtaining Evans' identification, a radio call for license verification since Evans did not have one on his person, and the writing out of the ticket. The request to search was made while the officer was writing the ticket. Accordingly, there was no Fourth Amendment violation. In each case upon which Evans relies for a contrary result, the questioning occurred either after the traffic stop was already

---

[3] (Citation omitted.) *Parker v. State*, 233 Ga. App. 616, 617-618 (1) (504 SE2d 774) (1998); *Padron v. State*, 254 Ga. App. 265, 268 (1) (562 SE2d 244) (2002).

[4] (Emphasis in original.) *Padron v. State*, supra at 268; accord *State v. Jones*, 252 Ga. App. 404, 406-407 (1) (556 SE2d 495) (2001); *State v. Sims*, 248 Ga. App. 277, 278 (546 SE2d 47) (2001).

[5] (Citation and punctuation omitted.) *State v. Sims*, supra at 278; see *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991); see also *United States v. Purcell*, 236 F3d 1274, 1279-1280 (11th Cir. 2001).

[6] (Punctuation omitted.) *Quinn v. State*, 268 Ga. 70, 72 (485 SE2d 483) (1997), citing *United States v. Mendenhall*, 446 U. S. 544, 553-554 (100 SC 1870, 64 LE2d 497) (1980).

[7] (Footnotes omitted.) *Henderson v. State*, 250 Ga. App. 278, 280 (551 SE2d 400) (2001).

completed thereby prolonging the detention,[8] or the officer — without an apparent valid purpose since no investigation was being conducted into the traffic violation authorizing the stop — retained the detainee's identification materials thereby prolonging the detention for questioning.[9]

As the evidence supports the trial court's conclusion that the officer's questioning was not the product of an illegal detention, we find no basis for reversal in the content of the questions, themselves.

(b) To determine whether a reasonable articulable suspicion exists, courts must look to the totality of the circumstances.

> The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person. The second element is the concept that the process just described must raise a suspicion that the particular individual being [detained] is engaged in wrongdoing.[10]

In this case, the trial court specifically determined that Trooper Erickson had reasonable articulable suspicion of criminal activity based upon Evans' startled reaction when spotting the police vehicle behind him; his immediate evasive maneuver upon seeing the vehicle; his return to travel in the same direction when he thought the trooper was no longer behind him; his extreme nervousness upon being stopped, which included trembling hands and an elevated heartbeat; the presence of paraphernalia commonly used to compose contraband "blunts"; and Evans' repetition of each question the officer asked which, in the trooper's experience, is indicative of deception. Under these circumstances, we cannot find the trial court erred in determining the trooper had a sufficient basis to believe Evans might be engaged in wrongdoing. While Evans' conduct may be susceptible to an innocent explanation, it is also consistent with illegal activity.

---

[8] *Faulkner v. State*, 256 Ga. App. 129, 131 (567 SE2d 754) (2002) ("no question that the initial stop for driving in the center lane was over at the time the police officer began to question"); *State v. Swords*, 258 Ga. App. 895, 897 (575 SE2d 751) (2002) (officer "not authorized to continue the detention in order to investigate other, potential violations of the law").

[9] *State v. Habib*, 260 Ga. App. 229, 231 (2) (581 SE2d 576) (2003) ("officer admitted that he held Habib's driver's license while asking questions").

[10] (Punctuation and footnote omitted.) *Blount v. State*, 257 Ga. App. 302, 303 (570 SE2d 705) (2002).

[C]ourts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. . . . All of this conduct was by itself lawful, but it also suggested that the individuals were [engaged in criminal activity]. *Terry*[11] recognized that the officers could detain the individuals to resolve the ambiguity.[12]

In his brief, Evans cites different cases from this Court wherein a specific, individual indicium present in the instant case was found to be insufficient, in and of itself, to support a reasonable suspicion of criminal activity.[13] He, however, offers no argument and cites to no case wherein *all* of the indicia present in this case — taken together — would be insufficient for a reasonable officer to believe Evans was engaged in wrongdoing.

Further, we reject Evans' comparison of the circumstances in this case to the ones we encountered in *State v. Aguirre*.[14] In *Aguirre*, the trial court found as simply speculative the detaining officer's determination that Aguirre was attempting to conceal his identity, and we affirmed the court's conclusion, since nothing in the record showed it to be erroneous. In this case, there was nothing speculative about the determination that Evans' abrupt, sharp turn onto a side street when spotting the State trooper was an evasive maneuver. Trooper Erickson actually doubled back and observed Evans as he returned to his original route of travel after he thought he had avoided the trooper. Herein, we affirm the trial court's finding that this activity, inter alia, supplied Erickson with a reasonable suspicion of wrongdoing.

For the reasons articulated above, we find no basis for reversal of the trial court's denial of Evans' motion to suppress.

2. Evans challenges the sufficiency of the evidence introduced against him because the vehicle he was driving and in which the con-

---

[11] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[12] *Illinois v. Wardlow*, 528 U. S. 119, 124-125 (120 SC 673, 676-677, 145 LE2d 570) (2000); accord *State v. Causey*, 246 Ga. App. 829, 833-834 (1) (540 SE2d 696) (2000); *State v. Ledford*, 247 Ga. App. 412, 416 (543 SE2d 107) (2000).

[13] See *Jorgensen v. State*, 207 Ga. App. 545, 547 (428 SE2d 440) (1993) (turning into apartment complex, alone, not sufficient to support stop based on an attempt to avoid a roadblock); *Attaway v. State*, 236 Ga. App. 307, 309 (511 SE2d 635) (1999) (driving several times around a subdivision is, alone, insufficient to support stop on basis of suspicious activity); *Hughes v. State*, 269 Ga. 258, 261 (1) (497 SE2d 790) (1998) (driving slowly around high crime area at night, alone, insufficient to support stop).

[14] 229 Ga. App. 736 (494 SE2d 576) (1997).

traband was found belonged to another party who had "equal access" to the car.

> The equal access rule, entitling a defendant to acquittal where evidence is presented that others had equal access to a vehicle or that the vehicle had been recently used by others, applies only where the sole evidence of possession of contraband found in the vehicle is the defendant's ownership or possession of the vehicle.[15]

If there is additional evidence of possession of the contraband by the accused — either circumstantial or direct — other than mere ownership, use, or possession of the vehicle, then an issue is made for the jury.[16]

Here, while claiming the cocaine did not belong to him, Evans admitted to a law enforcement agent that, at the time of the incident, he sold cocaine, thereby providing a basis from which the trier of fact could conclude Evans was, in fact, the owner of the cocaine found in the vehicle.[17] Two prior cocaine convictions were introduced as similar transactions, raising inferences about Evans' course of conduct and modus operandi.[18] The drugs were located in a Crown Royal bag (apparently a typical mode of contraband transport) which was exposed at Evans' feet in a car over which he had exclusive control at the time, creating the inference that he knew of its presence.[19] Further, the street value of the drugs was estimated at between $7,000-$8,000, challenging the plausibility of Evans' claim that another person simply left the cocaine unattended in a shared vehicle.[20] In addition, while the evidence was that ownership of the Oldsmobile in question was in another's name, the car was driven so regularly by Evans that his parole officer testified at trial he believed Evans to be the owner of the Oldsmobile, and he frequently saw it parked at Evans' residence at night; this, although the titular owner lived elsewhere and, Evans claimed, parked the car there.

"[W]here there is evidence other than 'equal access' connecting an accused to contraband, it is for the jury to determine guilt or innocence."[21] We find the evidence in this case sufficient for a rational

---

[15] (Citation and punctuation omitted.) *Bevis v. State*, 259 Ga. App. 269, 271 (2) (576 SE2d 652) (2003).

[16] Id.

[17] Id.

[18] *Turner v. State*, 247 Ga. App. 775, 776 (1) (544 SE2d 765) (2001).

[19] *Parris v. State*, 226 Ga. App. 854, 855 (487 SE2d 690) (1997); *Lester v. State*, 226 Ga. App. 373, 377-378 (487 SE2d 25) (1997).

[20] *Gaston v. State*, 257 Ga. App. 480, 487 (7) (571 SE2d 477) (2002).

[21] (Citation, punctuation and footnote omitted.) *Wilson v. State*, 256 Ga. App. 741, 742 (1) (569 SE2d 640) (2002).

trier of fact to reject Evans' "equal access" defense and find him guilty beyond a reasonable doubt of trafficking in cocaine.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED AUGUST 12, 2003.

*James W. Smith, Earl D. Clark, Jr.,* for appellant.

*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney,* for appellee.