## A06A0864. THE STATE v. JOHNSON.

### (637 SE2d 825)

BARNES, Judge.

The State of Georgia appeals the trial court's grant of a motion to suppress[1] contending the continued detention of Michael Johnson was legal. For the reasons stated below, we reverse the trial court.

A police sergeant arrested Johnson, and charged him with one count of possession of methamphetamine. Johnson was indicted and filed a motion to suppress. After an evidentiary hearing, the trial court granted the motion. The trial court found that Johnson's continued detention was illegal and without legal justification.

In reviewing a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision, and we must construe the evidence most favorably to the findings and judgment. We adopt the trial court's findings on disputed facts and credibility of the witnesses unless they are clearly erroneous. The trial court is the trier of fact, and its findings are analogous to a jury, and we will not disturb these findings if any evidence supports them. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

So construed, the evidence shows that while conducting a license check at an intersection one night, a police sergeant and members of the Governor's Office of Highway Safety stopped drivers to examine their driver's licenses and insurance cards, and to check if any of the drivers were impaired. The sergeant approached Johnson's vehicle as he drove through the intersection, and asked for his license and insurance card. While asking for the information, the sergeant detected an odor of alcohol in the vehicle, and asked Johnson to pull over to the shoulder of the road.

To determine where the alcohol was coming from and whether Johnson was driving under the influence, the officer asked Johnson to step out of the car and go to the rear of his vehicle. He anticipated having to do a field sobriety test, which was standard procedure to determine if someone was operating a vehicle under the influence of alcohol. Once Johnson was outside the vehicle, he appeared extremely nervous, but he was not stumbling or showing any other signs of intoxication. The sergeant testified that it was common for someone to appear very nervous at a traffic stop when the person was doing something illegal.

Although there were other officers in the vicinity, the sergeant was alone on the side of the road with Johnson in the dark. To ensure

---

[1] The State may directly appeal from an order granting a motion to suppress evidence. OCGA §§ 5-7-1 (a) (4) and 5-7-2; *State v. Mack*, 207 Ga. App. 287 (1) (427 SE2d 615) (1993).

his safety, the sergeant asked Johnson if he had any weapons or drugs. Johnson replied that he did not and the sergeant asked Johnson if he could search him. Johnson consented to the search. The sergeant testified that he performed the search to ensure his safety and that he did not think that Johnson had any drugs in his possession. The sergeant stated that he never threatened Johnson and that the two men were separated by about two feet when Johnson consented to the search. During the search the sergeant found a small baggie of methamphetamine in the watch pocket of Johnson's jeans.

The sergeant testified that he requested a full search instead of a *Terry* pat-down for weapons because he was alone with Johnson at night, and a full search was the most thorough way to ensure that Johnson did not have anything that could hurt the sergeant or cause Johnson to run away. He stated:

> I'm with him on the side of the road at dark. And I want to make sure that he doesn't have anything on him that would cause him to want to take off running through the woods, anything that's going to hurt me, and the most thorough way to do that is to search him.

The sergeant asked Johnson for his consent to search as soon as Johnson exited the vehicle, because the sergeant's main purpose was safety.

The sergeant testified that he was sure he asked Johnson for his license and insurance card sometime after the stop and before Johnson exited the vehicle, but that he did not remember whether Johnson provided a hard copy of the information, or exactly when he asked for the information. Fewer than five minutes elapsed from the time Johnson arrived at the license check until the time that the sergeant discovered the methamphetamine. About three minutes elapsed from the time Johnson exited the vehicle until the time the sergeant found the methamphetamine. The sergeant testified that he was not able to determine that Johnson was not under the influence of alcohol until after he discovered the methamphetamine.

The State argues that the trial court erred in suppressing the contraband discovered during a consent search after a legal stop and detention. Even though we acknowledge the trial court's concern about giving law enforcement officials the power to search routinely any individual they stop at a license check, the sergeant was authorized to take the actions he did in this case. Johnson could be required to exit his vehicle and submit to a field sobriety test because the

sergeant smelled alcohol in Johnson's vehicle. The search that followed was authorized by Johnson's consent, and Johnson does not argue that his consent to the search was anything other than voluntary.

In its conclusions of law, the trial court stated,

> just like in [*State v.*] *Gibbons*[, 248 Ga. App. 859 (547 SE2d 679) (2001),] the facts support a determination by the Court that the detention following the initial stop of the Defendant's vehicle appears to be a pretext to furnish the Officer solely with a forum to ask questions, not to pursue the ends of a legitimate traffic stop.

The trial court did not state, however, any facts in its findings of facts to support this conclusion. Instead, it found that the two primary purposes of the license check were to check licenses and to take impaired drivers off the road.

Our Supreme Court recently held:

> The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search. The Supreme Court of the United States has held repeatedly that mere police questioning does not constitute a seizure. Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage. Unless the detention was prolonged by the questioning, there is no additional seizure within the meaning of the Fourth Amendment.

(Citations and punctuation omitted.) *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006).

Consequently,

> the dispositive factor in this case is not the nature or subject of the officer's questioning, but whether that questioning took place during [Johnson's] otherwise lawful detention.... If a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation. *Harris v. State*, 269 Ga. App. 48 (603 SE2d 476) (2004).

*Salmeron*, supra, 280 Ga. at 736 (1).

In this case, the sergeant's purpose was to determine if Johnson was under the influence of alcohol or driving impaired. The sergeant could not make this determination without conducting a field sobriety test, and because he did not perform such a test until after he discovered the methamphetamine, the sergeant was not finished responding to the possible traffic violation. Therefore, Johnson's detention was legal.

Only when an officer continues to detain a subject after the conclusion of the traffic stop and to interrogate him does the officer exceed the scope of a permissible investigation of the initial traffic stop. *Henderson v. State*, 250 Ga. App. 278, 279 (551 SE2d 400) (2001). In *Henderson*, an officer asked the appellant about weapons and drugs during a valid traffic stop, and then asked for consent to search. This Court stated, "[h]aving already effected a valid stop of the vehicle, the trooper certainly did not violate the appellant's Fourth Amendment rights merely by requesting such consent." (Punctuation and footnote omitted.) Id. Further, officers generally may request consent to search even when they have no basis for suspecting a particular individual. *Florida v. Bostick*, 501 U. S. 429, 434-435 (111 SC 2382, 115 LE2d 389) (1991).

An officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop, however, exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity. *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996). In those cases, the detention must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. *Gibbons*, supra, 248 Ga. App. at 864. Only questions unrelated to the stop and which unreasonably prolong the detention are unlawful. "[D]etention, not questioning, is the evil at which *Terry*'s prohibition is aimed. Questions which do not extend the duration of the initial seizure do not exceed the scope of an otherwise constitutional traffic stop." (Punctuation and footnote omitted.) *Evans v. State*, 262 Ga. App. 712, 715 (1) (a) (586 SE2d 400) (2003). In this case, the stop was not unduly prolonged, and Johnson consented to the search.

Accordingly, we reverse the trial court's grant of the motion to suppress the methamphetamine found on Johnson and remand the case for further proceedings.

*Judgment reversed and case remanded. Andrews, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 25, 2006 — 

*Fredric D. Bright, District Attorney, Daniel B. Cochran, Assistant District Attorney,* for appellant.

*Donald W. Rogers,* for appellee.