A07A0895. LINDSEY v. THE STATE.
(651 SE2d 531)

MILLER, Judge.

Following a bench trial, Paul Lindsey was convicted of possession of methamphetamine. He now appeals, asserting as error the trial court's refusal to suppress evidence seized during the search of his truck. Finding that Lindsey's consent to the police search of his vehicle was valid, we affirm.

> In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous. Moreover, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.

(Citation and footnote omitted.) *Jackson v. State*, 280 Ga. App. 716, 716-717 (634 SE2d 846) (2006).

So viewed, the evidence shows that a clerk at a Dollar General Store in Mitchell County conducted a field test to determine the authenticity of a $100 bill that Lindsey and two other men, Jerome Turvin and Michael Johnson, had used to pay for purchases at the store. When the test indicated that the bill was counterfeit, the clerk contacted the Mitchell County Sheriff's Department and Deputies Martin Barnes and Dewayne Bachelor responded to the call.

During the investigation, Deputy Barnes remained inside the store with Lindsey while Deputy Bachelor took Turvin and Johnson outside and ran warrant checks on the two men.

Eventually, a Secret Service agent came to the scene and verified the authenticity of the currency. In the interim, however, Detective Clay Carroll, a member of the Southwest Georgia Drug Task Force, heard the request for a warrant check on Turvin over his police radio. Carroll had previously arrested Turvin on methamphetamine charges,

and he was aware that people sometimes went to stores such as Dollar General to purchase items used in the manufacture of methamphetamine. Given these facts, Carroll suspected drug-related activity and proceeded to the Dollar General Store.

Upon arriving at the scene, Carroll saw Turvin and Johnson sitting on a curb in front of the store and saw Lindsey standing next to a neighboring building. After Deputy Bachelor explained the circumstances to him, Carroll approached Lindsey, identified himself, and asked him "what was going on." Lindsey told him about the suspect $100 bill, and, in response to a direct question from Carroll, stated that he had driven himself, Turvin, and Johnson to the store in his truck. When Carroll asked whether Lindsey had any drugs or weapons in his truck, Lindsey responded: "Drugs? There ain't no drugs in there."

Carroll found the response unusual and, given the other circumstances Carroll regarded as suspicious, Lindsey's statement prompted Carroll to ask him for permission to search his truck. Lindsey consented, and during his search of the truck Carroll found a snuff can containing methamphetamine. Carroll testified that it was not until after he had arrested Lindsey and his companions that the Sheriff's Department informed him that the $100 bill in question was genuine.

On appeal, Lindsey asserts as error the trial court's denial of his motion to suppress the methamphetamine discovered during the search of his vehicle, arguing that Detective Carroll unlawfully detained him at the scene and that this unlawful detention invalidated his consent to the search of his vehicle. Lindsey's claim that he was wrongfully detained is premised on his assertions that the search occurred after the Secret Service agent had determined that the currency was not counterfeit, and that Carroll otherwise lacked the reasonable suspicion necessary to conduct a *Terry*[1] stop with respect to suspected drug activity. For the reasons set forth below, we disagree.

Where an individual is being lawfully detained by the police, an officer does not violate the Fourth Amendment by merely requesting permission to search that person's vehicle. See *Henderson v. State*, 250 Ga. App. 278, 279 (551 SE2d 400) (2001). Rather, such a violation occurs only where the individual is detained for further questioning or for the purpose of seeking consent to search, even though the initial investigation has concluded and the police are "without reasonable suspicion of [additional] criminal activity." (Punctuation and footnote omitted.) Id. at 280. "It is [the] *continued detention* that makes the

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

questioning and request to search without reasonable suspicion of [additional] criminal activity impermissible." (Citation omitted; emphasis supplied.) *State v. Gibbons*, 248 Ga. App. 859, 864 (547 SE2d 679) (2001) (Pope, P. J., concurring specially). See also *Evans v. State*, 262 Ga. App. 712, 715 (586 SE2d 400) (2003).

Here, Lindsey does not dispute the legality of any detention he suffered as a result of the counterfeit investigation, but argues that the investigation had ended before Carroll requested consent to search his vehicle. Although some evidence contained in the record supports this contention, more substantial evidence supports the trial court's conclusion that Carroll had a reasonable suspicion of additional criminal — i.e., drug-related — activity. This suspicion, in turn, justified Carroll's brief detention of Lindsey for the purpose of investigating that suspicion.

A reasonable suspicion of criminal activity necessary to justify an investigative detention is shown by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing." (Citation omitted.) *State v. Johnson*, 282 Ga. App. 102, 105 (637 SE2d 825) (2006). See also *State v. Ledford*, 247 Ga. App. 412, 415-416 (1) (b) (543 SE2d 107) (2000). Facts supporting such a suspicion can include an officer's "objective observations, information [received] from police reports, . . . and consideration of the modes or patterns of operation of certain kinds of lawbreakers," as well as the officer's experience and training, which allows him to draw "inferences and deductions that might well elude an untrained person." (Footnote omitted.) *Evans*, supra, 262 Ga. App. at 716 (1) (b). See also *State v. Adams*, 186 Ga. App. 87 (366 SE2d 326) (1988).

Carroll testified that he initially suspected drug activity based upon his knowledge that at least one suspect had been previously arrested on methamphetamine charges, that those seeking to manufacture methamphetamine frequently shopped for supplies at stores such as Dollar General, and that the counterfeit case involved three suspects shopping together. Given his experience as a police officer in general and with drug enforcement specifically, Carroll also found suspicious Lindsey's response upon being asked whether he had drugs or weapons in his truck. While these circumstances might well be "susceptible to an innocent explanation, [they are] also consistent with illegal activity," and we therefore cannot say that the trial court erred in finding that they gave rise to a reasonable suspicion sufficient to justify an investigatory stop. *Evans*, supra, 262 Ga. App. at 716 (1) (b). See also *Ledford*, supra, 247 Ga. App. at 416-417 (1) (b).

Given that Lindsey does not dispute the fact that he voluntarily consented to the search of his vehicle, and because the investigating officer's actions were supported by a reasonable suspicion, we affirm the trial court's denial of Lindsey's motion to suppress the evidence seized during the police search of his truck.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED SEPTEMBER 5, 2007 — 

*Gilbert J. Murrah*, for appellant.

*Joseph K. Mulholland, District Attorney, Ryan C. Cleveland, Assistant District Attorney*, for appellee.